OPINION OF THE COURT
William H. Bristol, J.
Urban and suburban shopping malls present not only opportunities for economic growth,[1] but, also, because of their quasi-public nature they present opportunities for growth of the common law.
Midtown Plaza in Rochester, New York, was one of the first urban shopping malls in New York State. Built in 1962,[2] it was successfully designed to encourage people to enter and wander aimlessly in the mall in the hope that these same people would become customers of the adjoining stores. Needless to say, not all who come to the plaza intend to become customers.
Edward Wilson, the defendant in this case, is charged with trespassing at Midtown Plaza on October 7, 1983, in violation of section 140.04 of the Penal Law. The criminal information filed against him charges that: “said defen *56 dant did knowingly and unlawfully enter and remain within the Plaza after your complainant told the defendant to leave. Furthermore complainant states he observed the defendant within said plaza and he has been told several times to leave and not return, defendant again was told to leave and refused stating, to your complainant: ‘You can’t tell me to leave and I don’t have to leave’.”
Section 140.05 of the Penal Law states: “A person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises.”
Subdivision 5 of section 140.00 of the Penal Law provides that: “5. * * * [a] person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.”
Pursuant to CPL 170.30 and 170.35, the defendant is entitled to dismissal of the information if it is insufficient on its face and does not conform with the requirements of CPL 100.40 (subd 1) and 100.15. Specifically, the factual part of the information must have allegations which together with those of any supporting depositions which may accompany it, “provide reasonable cause to believe that the defendant committed the offense charged in the accusatory part of the information”. (CPL 100.40, subd 1, par [b].)
Defendant argues that there are no factual allegations sufficient to show that he entered or remained unlawfully at Midtown Plaza; that Midtown Plaza is a public place and, therefore, to be lawful, an order to leave such a place must be predicated on some sort of affirmative act that day which forms a reasonable basis for the owner or his agent to ask the defendant to leave. Allegations of his mere presence in Midtown Plaza, defendant argues, even assuming that on a previous date he was given a lawful order to leave, are insufficient to justify revocation of his license to enter or remain at Midtown in the future.
While the People concede that the issue is whether the information states factual allegations showing that the *57 defendant was given a “lawful order” to leave the premises, they claim that since the security agent in question had undisputed authority to order the defendant to leave, as long as such order was not based upon traditionally suspect classifications such as race, creed, color, religion or national origin, then regardless of its reasonableness or lack of reasonableness it was a lawful order. As such, the People argue, there is no need for the information to contain any allegations of fact to show the revocation of the privilege was based upon “reasonable”, articulated cause on the day in question.
The information in question without a doubt states allegations of a factual nature concerning the issue of “knowingly”, the issue of “enters or remains”, and the issue of “upon premises”. The question, then, is whether the allegations in this information are of an evidentiary, factual character that support or tend to support the charges that the defendant either “unlawfully” entered or “unlawfully” remained on the mall premises.
First, a prior lawful direction on one date to leave a public building and not return does not by itself give rise to an “unlawful remaining” on the same premises on a different date. “The public has a perfect right to enter a public building as long as they do not create a disturbance or remain unlawfully in that building after a lawful order to leave.” (People v Wolf, 63 Misc 2d 178, 180.) Midtown Plaza, as will be discussed later herein, is for all intents and purposes, a partially public building. Thus, the naked assertion that a particular defendant was on a previous date asked to leave Midtown Plaza by itself does not serve as a lawful basis for an order to leave on a later date. Nor does it serve as a factual basis to show unlawful entry on a different date.
The information attempts to allege facts of an evidentiary nature to show the unlawfulness of the remaining on the premises. It states: “Furthermore complainant states he observed the defendant within said plaza and he has been told several times to leave and not return, defendant again was told to leave and refused stating, to your complainant: ‘You can’t tell me to leave and I don’t have to leave’. ”
*58 Nowhere in the information are facts articulated which serve as a reason to support the request to leave the premises.
It should be noted that the site of the incidents herein is the plaza area of Midtown and not the inside of any of the stores contiguous to it. Such stores are more properly designated as “quasi-public buildings” and have a different status in the eyes of the law. (Cf. People v Wolf, 63 Misc 2d 178, 180, supra.)
Midtown Plaza itself, although a privately owned building, is clearly open to the public and was so open at the time of each incident herein. In this regard the case of People v Rewald (65 Misc 2d 453) is instructive. Mr. Justice Lyman H. Smith in that case dealt with a classic “company town” owned by the corporate owners of a migrant labor camp. He stated that: “While it is undisputed that residents, nonresidents, friends, tradesmen, social workers, college students, reporters and politicians contributed to the flow and volume of traffic in and through the camp, nevertheless, the corporate owner insisted upon and at times exercised a discriminatory private control over the camp area.” (People v Rewald, supra, at pp 455-456.)
In this regard the camp was like Midtown Plaza.
The court went on to state that: “This court is compelled to conclude that mere title or possessory control of premises cannot be determinative of the issues met here. In those cases revealing * * * [the] public or quasi-public use of premises a determination of the right to impose the penal sanction against trespass must depend upon the degree of public use which the owner permits or invites upon his premises. Public or partial public use of premises, whether under express or implied invitation or permission, carries with it the license to enter and, absent abuse of such privilege, carries with it the correlative license to lawfully remain. In cases such as this, the owner’s or possessor’s revocation of the right to remain (by denial, request or * * * order to leave), which will convert the status of the alleged offender from licensee to that of [a] criminal trespasser, must rest upon, and arise from, either reasonable customs and practices, rules, regulations, and/or statutory law, or under circumstances from which a *59 reasonable owner and possessor would anticipate clear and present danger to person, property or the public peace. But, in no event, under the circumstances we have here, should revocation of the right to remain be predicated upon mere whim, caprice, or arbitrary choice. To permit arbitrary and capricious ejection from [a] publicly used premises would violate not only the * * * [clear] intendment of the statutory privilege, but would clearly raise serious questions of fundamental constitutional rights.” (People v. Rewald, supra, at p 457.)
Thus, case law supports the defendant’s position that for there to be a “lawful order” to eject him from partially public premises, there must be some articulated, reasonable basis for it. A review of the factual part of this information fails to reveal any facts which would form a reasonable basis for an order to leave, the refusal of which would constitute “unlawful remaining”. As such, the information is legally insufficient on its face and is, therefore, dismissed.

. Shopping malls have grown dramatically in number as well as size and complexity. For instance, there were 191 malls in the State of New York in 1960; 438 in Í965; 670 in 1970; 911 in 1975; 916 in 1983. (See Shopping Center Directory, National Research Bureau, 1960, 1965, 1970, 1975, 1984.) For an account of the growth in the complexity of malls and the range of social interaction therein, see, also, The Mailing of America (New Times, May 1, 1978, p 30.)

. Midtown Plaza is a rectangularly shaped, enclosed mall on a 12-acre site. It has two levels, 83 stores, and underground parking space for 2,000 automobiles. (1984 Shopping Center Directory; The East, National Research Bureau, 1983.)