*407 OPINION OF THE COURT
Chief Judge Cooke.
An individual who has been issued a “persona non grata” letter by a State University president, that banishes the individual from that part of the university campus normally “open to the public”, may not be convicted of trespassing for entering the campus when no proof is adduced to show that the banishment order was lawful. To sustain the burden of showing the order’s lawfulness, the People must demonstrate that, given the nature and purpose of the property, the particular exercise of the power to exclude had a legitimate basis. The purpose would not be legitimate if, for example, its enforcement unduly infringed upon an independent statutory or constitutional right of the defendant to be present on the property.
Defendant was an enrolled student at the State University of New York at Binghamton (SUNY-Binghamton) from time to time over the past 10 years. On February 23, 1981, when defendant was no longer a student, the president of SUNY-Binghamton issued an order banishing him from campus by declaring him “persona non grata”. This letter informed defendant that he would be subject to arrest if he returned to the campus.
SUNY-Binghamton law enforcement personnel discovered defendant at the Campus Pub on October 23, 1981. The Pub is located in the University Union building on the SUNY-Binghamton campus. Defendant was arrested and charged by information with criminal trespass in the third degree (Penal Law, § 140.10) for his allegedly unlawful presence on campus.
A nonjury trial was held in Vestal Town Court on October 19, 1982. Prior to trial, defendant and the People stipulated that: in February, 1981, defendant received a letter from SUNY-Binghamton’s president declaring him “persona non grata”; defendant was not a student, faculty member, or employee at the school at that time; notwithstanding this warning, defendant was present on the campus in October, 1981; and “[a]t all times pertinent to this case, the State University of New York at Binghamton, the University Union building, and the Campus Pub were *408 ‘open to the public’ within the meaning of Penal Law Section 140.00 [5].” At the request of the People, and over defendant’s objection, the court found “as a matter of law” that an order of banishment “can be lawful, even if said school did not have any reason to issue it.” Additionally, at the People’s request, the court declined to consider any evidence on the issue of the order’s lawfulness. Based on these findings and the stipulated facts, the People rested. Defendant moved to dismiss the information on the grounds that SUNY-Binghamton was powerless to issue orders of permanent exclusion, that the order was issued in violation of defendant’s right to due process as he was accorded no hearing, and that the proof offered by the People as to the lawfulness of the order was insufficient. This motion was denied and defendant was convicted of the charged crime. The conviction was upheld by the County Court.
This court now reverses.
A prosecution for criminal trespass in the third degree may be maintained against a person who “knowingly enters or remains unlawfully in a building or upon real property” (Penal Law, §140.10). Generally, a person will be deemed to “[e]nter or remain unlawfully” on property when he or she does so without license or privilege (Penal Law, § 140.00, subd 5). When the property is “open to the public” at the time of the alleged trespass, however, the accused is presumed to have a license and privilege to be present (id.). In such a case, the People have the burden of proving that a lawful order excluding the defendant from the premises issued, that the order was communicated to the defendant by a person with authority to make the order, and that the defendant defied that order (id.; see People v Brown, 25 NY2d 374, 377).
At the outset, we reject defendant’s claim that SUNY-Binghamton is not generally empowered to exclude persons from the university campus. Article 129-A of the Education Law governs the regulation of college campuses and other college property used for educational purposes. Beyond a mere grant of power, it requires “[t]he trustees or other governing board of every college chartered by the regents or incorporated by special act of the legislature” to *409 “adopt rules and regulations for the maintenance of public order on college campuses and other college property” (Education Law, § 6450, subd 1). It additionally provides that “[t]he penalties for violations of such rules and regulations shall be clearly set forth therein and shall include provisions for the ejection of a violator from such campus and property” (id.).
Pursuant to this statutory directive, the Board of Trustees of the State University of New York promulgated rules intended to “prevent abuse of the rights of others and to maintain * * * public order appropriate to a college or university campus” (8 NYCRR 535.1; see, generally, 8 NYCRR part 535). Among the authorized penalties that may be imposed for a violation of the rules of conduct (see 8 NYCRR 535.5) is to have the offending person’s “authorization to remain upon the campus or other property withdrawn” and to direct that person to “leave the premises” (8 NYCRR 535.5 [a]). Failure to voluntarily comply with such a directive will subject the person to ejection (id.). It is clear, therefore, that administrators of SUNY-Binghamton have the general power to exclude from the campus persons who do not abide by the rules of conduct. A reasonable and practicable means of effectuating that policy could be to advise an individual that, due to past conduct, he or she is no longer welcome on the campus and will be subject to arrest for trespassing upon return. Exclusion is a natural concomitant to the power to withdraw a person’s authorization to remain on the college campus.
There is also no merit to defendant’s argument that any order of exclusion would be unlawful, as violative of due process, absent the holding of a hearing prior to its issuance. Although the campus at SUNY-Binghamton may be open generally for the enjoyment of the public, defendant, who concededly is not a student or employee at the campus, has identified no “property” or “liberty” interest in being present on campus grounds that he could be lawfully deprived of only after being accorded a hearing (cf. Board of Curators, Univ. of Mo. v Horowitz, 435 US 78, 82-84; Board of Regents v Roth, 408 US 564, 568-572). Indeed, defendant claims only that the issuance of a “persona non grata” letter unlawfully inhibits his constitutional right to *410 travel (see, e.g., Califano v Aznavorian, 439 US 170; Shapiro v Thompson, 394 US 618; United States v Guest, 383 US 745). It cannot be said that excluding from college campuses individuals who have flouted basic rules of order implicates the broad concept of freedom of movement embraced in this constitutional right (see Shapiro v Thompson, 394 US 618, 629, supra).
That SUNY-Binghamton may enjoy the general right to exclude persons from its campus and that it may do so in some cases without first holding a hearing is not determinative of this appeal, however. It is a wholly different question whether the People have satisfied their burden of proving every element of the charged offense. The required proof in this case includes the component that the particular order of exclusion was lawful and, hence, that defendant’s defiance of that order, after notice, would subject him to criminal liability for trespass.
In this case, defendant and the People stipulated that the SUNY-Binghamton campus was at all times “open to the public” within the meaning of section 140.00 of the Penal Law (see, also, People v Taylor, 114 Misc 2d 680), that defendant was served with an order issued by SUNY-Binghamton’s president declaring defendant “persona non grata” on the campus and that defendant, by returning to the campus, defied that order. Solely at issue, therefore, is whether there was sufficient evidence to establish that the particular order was lawful.
Although, as administrators of SUNY-Bing-hamton have broad power and great flexibility in maintaining order and securing the safety of others on the school campus (see People v Meadow, 101 Misc 2d 203), that power is not absolute. The power to exclude does not sanction orders based “directly or indirectly” on “the race, creed, color, national origin, sex, or disability or marital status” of the person sought to be excluded (see Executive Law, § 296, subd 2, par [a]). Moreover, when the public enjoys broad license to utilize certain property, State trespass laws may not be enforced solely to exclude persons from exercising First Amendment or other protected conduct in a manner consistent with the use of the property (Food Employees v Logan Val. Plaza, 391 US 308, 319- *411 320, citing Marsh v Alabama, 326 US 501; compare Prune-Yard Shopping Center v Robins, 447 US 74). Therefore, a decision to exclude that is predicated on or impermissibly inhibits a constitutionally or a statutorily protected activity will not be lawful (see, e.g., People v Bush, 39 NY2d 529, 538, and at pp 538-543 [Cooke, J., dissenting; labor picketing]; People v De Clemente, 110 Misc 2d 762 [restricting travel right by exclusion from airport terminal]; People v Rewald, 65 Misc 2d 453 [freedom of press]).
To satisfy its burden of proof with respect to the element of the crime that a “lawful order not to enter” the property issued, the People must demonstrate that the particular order of exclusion had a legitimate basis and that, considering the nature and use of the subject property, its enforcement did not unlawfully inhibit or circumscribe the defendant from engaging in constitutionally or statutorily protected conduct. When, as in this case, the subject property is publicly owned and maintained, the People may not satisfy their burden of proof on this issue by relying on a presumption that the public official authorized to maintain order on campus discharged his or her responsibility, in the particular instance, in a lawful manner (see People v Session, 34 NY2d 254, 256; People v Richetti, 302 NY 290, 298). A “mandatory” or “conclusive” presumption, which operates to require the finder of fact to hold against the defendant in the absence of some showing by the defendant to the contrary, may never be applied in a criminal case with respect to one of the elements of the crime being prosecuted. Shifting the burden of production or persuasion to the defendant under such circumstances would impermissibly relieve the People of their burden of proving every element of the crime beyond a reasonable doubt (see Sandstrom v Montana, 442 US 510, 514-524; People v Leyva, 38 NY2d 160, 165, 167; McCormick, Evidence [2d ed], § 346, p 831; see, generally, Matter of Winship, 397 US 358, 364).
In the instant case, the People offered no evidence at trial to demonstrate that the issuance of the particular “persona non grata” letter to defendant, banishing him from the SUNY-Binghamton campus, was lawful. There is no evidence in the record thát would indicate that the order to remain off the property had a legitimate purpose, ration *412 ally related to the power to maintain order on the campus, or that its enforcement in this case violated no independent right of defendant. The People only suggest, and the trial court found, that because the president of SUNY-Bing-hamton has the general power to exclude individuals from the campus, this and any other particular order would be deemed lawful without a showing of any reason underlying its issuance. In so finding, the trial court could not properly rely on a presumption that the president of SUNY-Bing-hamton acted lawfully as that would unconstitutionally shift the People’s burden of proving that the particular order was lawful.
Accordingly, the order of the County Court should be reversed, the conviction vacated, and the information dismissed.
Judges Jasen, Wachtler, Meyer, Simons and Kaye concur; Judge Jones taking no part.
Order reversed, etc.