OPINION OF THE COURT
Samuel M. Levine, J.
THE CHARGE
Defendant is charged with violating Penal Law § 140.05— *908 trespass (a violation) — on August 20, 1997 at 9:10 a.m. at 1103 Stewart Avenue, East Garden City, New York.
The District Court information signed by Police Officer William Purcell alleges: “the defendant did knowingly enter or remain unlawfully in or upon the premises. To Wit: I was informed by John Carracciolo, building manager of said building, he observed the defendant on the property of said building and was asked to leave and refused. Upon arrival at 1103 Stewart Avenue, (Garden City, N.Y.) the defendant was on said property”. The supporting deposition of John Carracciolo, the building manager, dated August 20, 1997, stated that: “when I looked out of the window and noticed a man dressed in a priest outfit, whom I know as John T. Murphy. I know this gentleman from dealings in the past. John Murphy is an anti abortion demonstrator who is present almost every week. I have told him numerous times, he is not allowed on the property of this building * * * I would like him arrested if he comes on the property”.
THE TRIAL
A nonjury bench trial was held by this court on May 21 and 22, 1998 in the District Court of Nassau County, Criminal Part 12. The defendant did not testify.
FINDINGS OF FACT
John Carracciolo was the primary witness for the prosecution. He claims to be the building manager, who was familiar with the defendant’s prior visits to the office building at 1103 Stewart Avenue in Garden City East, near an exit service road to the southbound lane extension of the Meadowbrook Parkway. His testimony followed and included the statements made in his supporting deposition. No proof of ownership of the building was presented, except for an inconclusive tax bill. He stated that the building he managed was a public office building housing many tenants, including a medical doctor, and an office which was alleged to be performing abortions on female patients. No signs were posted warning about or prohibiting trespassing. No guards or security person was outside the building. The “front” main public entrance to the building was actually in the back of the building adjacent to the parking areas on the north and west sides of the building, within the property lines (as shown on defendant’s exhibit A in evidence— part of a lot survey).
At about 8:00 a.m. on August 20, 1997, witness Carracciolo saw the defendant on the sidewalk near the front door (about *909 10 feet away), holding rosary prayer beads and papers in his hand. He was offering the papers (about abortions) to people on their way into the building. Defendant spoke some words with some of the people entering the building as they accepted his paper. Others merely walked around him. Defendant did not stop anyone from entering the building. He was not carrying a sign — merely pamphlets about abortions.
Witness Carracciolo came downstairs and confronted the defendant with a demand that he leave the property. The defendant ignored him.
He referred to the defendant as Mister Murphy rather than Father Murphy and exhibited a rather hostile attitude toward the defendant during his testimony. He challenged the defendant’s status as a Catholic priest. (No testimony was offered to negate that inference.) Witness Carracciolo was very evasive about his knowledge of the abortion clinic operated in his building. He even denied knowledge and was evasive on the questions relating to the building owner’s attempts through legal action to remove the tenant operating the abortion clinic. No proof was presented regarding the owner’s policy about trespassers or the owner’s knowledge of defendant’s prior conduct. Nor was there any testimony about any authority given to managing agent Carracciolo to remove this defendant from the premises. The witness admitted that he gave no instructions to the security guards inside the building to remove the defendant, or any other visitor outside the building, on the day in question or any day prior thereto.
The witness did admit that he was aware of some kind of lawsuits against the tenant known as the Long Island Gynecological Service. He further admitted that there had been many demonstrators (pro and anti-abortionists) at the building on many previous occasions. The defendant appeared on many prior occasions as well. At about 9:00 a.m., complaining witness Carracciolo then called the Nassau County Police Department in order to arrest the defendant for trespassing. Witness Carracciolo’s testimony was evasive and not credible on critical facts during his direct and cross-examination.
Police Officer William Purcell (along with other officers) responded, carried out an arrest and issued personal appearance ticket No. 155213 to the defendant, returnable in our District Court on September 2, 1997. Handcuffs were placed on the defendant before being given the appearance ticket.
(This case appeared on the court calendar 18 times before coming before this Judge for trial on May 21, 1998.)
*910 Officer Purcell admitted that he knew about the prior history of the protestors at the building in the past, including the presence of the defendant on many occasions. He remembered the defendant telling him on the day of his arrest that: “I have a right to be there, and no one was stopped from entering the building”. The police officer was not shown, nor was he aware of, any court order restraining the defendant from being on the premises. He was aware, however, that witness Carracciolo “was not fond of Father Murphy”. The police officer had previously advised Mr. Carracciolo that protesters were allowed on the public sidewalk.
It is to be noted that the defendant was standing on a sidewalk used by the public to go into the main door to the building.
CONCLUSIONS OF LAW
1. The defendant John T. Murphy entered the subject premises lawfully.
Penal Law § 140.05 defines trespass (as a violation — not a crime) as follows: “[a] person is guilty of trespass when he knowingly enters or remains unlawfully in or upon premises”. (Emphasis added.)
Penal Law § 140.00 (5) defines “enter or remain unlawfully” (in part) as follows: “A person ‘enters or remains unlawfully’ in or upon premises when he is not licensed or privileged to do so. A person who, regardless of his intent, enters or remains in or upon premises which are at the time open to the public does so with license and privilege unless he defies a lawful order not to enter or remain, personally communicated to him by the owner of such premises or other authorized person.” In the case at bar, it was established that the defendant was on the sidewalk near the main door entrance to a public office building. Members of the public (including defendant) were invited and had a right to use the sidewalk to enter the building. (This sidewalk was inside the property lines and adjacent to the parking lot for the building.)
It has been held that when the property is open to the public at the time of the alleged trespass, the accused is presumed to have a license and privilege to be present. (People v Leonard, 62 NY2d 404, 408 [1984].)
Where a facility is public in nature, an individual has a right to enter and remain in that building, unless he engages in some unlawful activity. (People v Leonard, supra; People v De *911 Clemente, 110 Misc 2d 762, 765 [Crim Ct, Queens County 1981].)
Public or partial public use of the premises, whether under express or implied invitation or permission, carries with it the license to enter. (People v Wilson, 122 Misc 2d 55, 58 [Rochester City Ct 1983].)
At no time, however, did defendant Murphy enter the building or prevent anyone else from doing so. Defendant Murphy did however lawfully enter the subject property.
2. The defendant remained lawfully on the subject property. He did not know it was unlawful to remain.
An individual remains lawfully on property open to the public provided that the individual does not interfere with the particular purpose of the property and lawfully remains on the public property. Once the premises has been lawfully entered, the law does not make it unlawful to remain after being requested to leave. (People v Collins, 44 Misc 2d 430 [1964], affd 16 NY2d 554; People v Ranieri, 144 AD2d 1006, 1008; People v Rewald, 65 Misc 2d 453.)
The prosecution did not prove that the defendant knowingly remained unlawfully on the premises. (The necessary elements of the violation of trespass — as a violation.) Defendant had not been arrested on the many prior occasions that he carried out the same conduct at the same site involved in the instant charges. Thus, he undoubtedly assumed, and could reasonably conclude, that his freedom of speech rights (in passing out literature about abortions) gave him the continued right to do so on August 20, 1997. It was reasonable for the defendant to honestly believe that he had a license or privilege to be on the premises and hand out his literature. (People v Ranieri, 144 AD2d 1006, 1008 [4th Dept 1988], supra; People v Basch, 36 NY2d 154.)
The attempt by the complaining witness to remove the defendant by an unauthorized order to leave does not, in this case, serve as a lawful predicate for establishing an unlawful trespass. The defendant was exercising his constitutional right of free speech at a private place that he lawfully entered. An unauthorized decision by the property owner’s agent to exclude an individual from a public place because he is exercising his right to free speech will not be lawful. (People v Leonard, 62 NY2d 404, 411 [1984], supra.)
*912 3. The defendant lawfully exercised his constitutional right of free speech.
Without freedom of expression, thought becomes checkered and atrophied. (Kovacs v Cooper, 336 US 77 [1949].) Freedom of speech is the matrix, the indispensable condition of nearly every other form of expression. (Palko v Connecticut, 302 US 319 [1937].) The freedom of expression embraces the freedom to distribute information and materials to all citizens. This freedom is “clearly vital to the preservation of a free society”. (Martin v Struthers, 319 US 141, 146-147 [1943].)
This court is mindful of the difference between State action and private action in determining the questions involving private action limitations of free speech. The level of governmental participation (State action) in limiting freedom of speech, giving rise to constitutional challenge, must be significant in order to trigger constitutional protections. (SHAD Alliance v Smith Haven Mall, 66 NY2d 496, 502 [1985].)
In the instant case, it appears that private action is involved in the attempt by the complaining witness Carracciolo to limit the defendant’s freedom of speech. He was trying to terminate defendant’s otherwise lawful conduct in exercising his right of free speech.
4. The complaining witness had no authority to stop defendant from exercising his right to free speech and remove him from the premises.
No credible evidence or proof was presented by the prosecution that the complaining witness Carracciolo was duly authorized by the owner of the property and building to stop the defendant from exercising his right of free speech and remove him from the premises. Therefore, an essential element of the violation was missing. The owner of the property failed to testify. The complaining witness Carracciolo had an obvious dislike and antagonistic attitude toward the defendant and his cause. The credibility of all of his testimony was denigrated and questionable.
5. Excluded Evidence: The defendant’s exhibits B and C (for identification) were not admitted into evidence.
These Newsday stories of prior incidents at the subject premises in January and March of 1995 were collateral material and contained hearsay that was properly objected to by the prosecution. (See, Prince, Richardson on Evidence § 6-305, at 383; § 8-101, at 497 [Farrell 11th ed].)
*913 6. The prosecution failed to prove the elements of the violation as charged.
The findings of fact hereinabove and reasons set forth in the above conclusions of law support this court’s conclusions stated hereinabove, and the verdict hereinbelow.
This court is mindful of the problems and conflicts that are inherent in cases and situations involving people who are exercising their Federal and State constitutional right to freedom of speech. Owners of private property have concomitant rights to privacy and to control of the use (or abuse) of their property.
There must, however, be a balancing of the equities whereby the individual’s superior constitutional rights must be weighed and considered valid and appropriate when faced with unjustified or unreasonable challenges by property owners.
This court was aware of a previous recent decision by a learned judicial colleague in our District Court for Nassau County, in the case of People v Raab (163 Misc 2d 382 [1994]). In that case, another learned judicial colleague in our court was charged with trespass (before his election) as a violation (Penal Law § 140.05) for distributing his election campaign material at a church festival in September of 1994 that was open to the public. The church festival chairman asked the local police department to enforce a church policy allegedly prohibiting the distribution of literature of any type on church property. The candidate was prosecuted and tried in a nonjury bench trial. The judgment of conviction was unanimously reversed on the law and the facts and the accusatory instrument was dismissed in the interests of justice. (People v Raab, 175 Misc 2d 287 [App Term, 2d Dept 1997].)
7. The prosecution failed to prove the defendant guilty beyond a reasonable doubt.
8. The verdict of this court is that the defendant, John T. Murphy, is not guilty of this violation of trespass under Penal Law § 140.05.