**Robert Hunter SOUDERS,**
**Plaintiff–Appellant,**

v.

**Donella J. LUCERO, individually and in her capacity as manager of security services for Oregon State University; Robert Brown; and Ty Duby, individually and as an Oregon State Police officer, Defendants–Appellees.**

No. 98–35527.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1999.

Filed Nov. 15, 1999.

Christine Chute, Assistant Attorney General, Salem, Oregon, for the defendants-appellees.

Before: FLETCHER and TASHIMA, Circuit Judges, and ISHII, District Judge.[1]

FLETCHER, Circuit Judge:

Robert Hunter Souders appeals the district court's grant of summary judgment in favor of defendants in Souders' 42 U.S.C. § 1983 action alleging that Oregon State University ("OSU" or "University") Security Services employees wrongfully excluded him from the University campus after two female University students brought complaints against him for stalking. Souders, a stock broker and OSU alumnus, frequented the University campus to attend events and to use its library for his investment activities. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

### FACTUAL BACKGROUND & PROCEDURAL HISTORY

Robert Souders is a graduate of OSU, a state institution. Until served with an exclusion notice by campus security, he used the OSU library, and attended public events on campus. In December, 1993, OSU student, Nora Foster, obtained a Temporary Protective Stalking Order against Souders in the Benton County Circuit Court. The Order prohibited Souders from having any contact with Foster, from being inside Weniger Hall, and from being on the 5th and 6th floors of the OSU library at specified times.[2] The order did

Charles O. Porter, Eugene, Oregon, for the plaintiff-appellant.

---

1. The Honorable Anthony Ishii, United States District Judge for the Eastern District of California, sitting by designation.

2. The Order was issued pursuant to former O.R.S. § 163.738 (1993) which provided that a stalking protective order may be entered against a person if the court finds by a preponderance of the evidence that the person,

not ban Souders from the University campus.

Effective January 1995, OSU Security Services had in place a policy for "Trespass on Campus–Exclusion Orders." It provided for the issuance of a written trespass warning[3] to non-students "as a means to provide protection, safety and security for the welfare of the college students, staff and faculty." It also laid out procedures to be followed upon issuance of a warning, including the requirement that the violator be informed of the reason he/she is being directed off campus, and of details of the incident. The policy provided for appeal by non-students to the Security Services Manager.

On February 22, 1995, after receiving complaints about Souders from Foster, and after confirming with the county district attorney's office that there was an outstanding stalking order against Souders, Oregon State Trooper and Campus Security employee, Ty Duby, arrested Souders in the library. Souders denied remembering committing any of the acts alleged by Foster. Duby served Souders with an Exclusion Notice, banning Souders from the entire OSU campus.[4] Souders appealed the exclusion notice. The appeal was denied by Donella Lucero, Manager of Campus Security. The letter of denial explained that the exclusion was effective until June 15, 1995 (at which time Foster would have graduated), and that if, after

that date, Souders was "involved in any incident and found to be in violation of state law while on campus" he would again be excluded. The letter further stated that "[i]f you have any questions, please contact me at 737–3184."

In October 1995, on the advice of University Counsel, Caroline Kerl, Lucero issued guidelines to Campus Public Safety Officers regarding the use of exclusion orders. The guidelines explained that exclusion orders could be issued to persons considered "a danger to persons or property on campus" including any person who is "threatening a student or staff member." Students or staff were not to be excluded in this manner. Violations involving campus community members were to be reviewed by the student judicial system or Human Resources. Under the guidelines, all exclusion orders had to be accompanied by an officer's report, including specific reasons the exclusion order was issued. Issuing officers were required to note that they had informed the offender of his/her right to appeal, and should give the offender a copy of the appeal form if possible. In addition, the issuing officer was required to include in the report any and all alternative measures taken to seek compliance before the warning was issued.

On December 7, 1995, OSU student, Joy Delgado, filed a complaint about Souders with Campus Security. Lucero immediately issued a second exclusion notice to

---

without legitimate purpose, intentionally, knowingly or recklessly engaged in repeated and unwanted contact with another person thereby alarming or coercing the other person. Souders successfully challenged the validity of the statute, which was found to be unconstitutionally vague by the Oregon Court of Appeals. *See Foster v. Souders*, 135 Or. App. 542, 899 P.2d 733 (Or.App.1995).

**3.** Although the policy's title indicates that it covers trespass warnings and exclusion orders, the substantive guidelines refer only to trespass warnings. Presumably, the University intended the policy to cover both. The University appears to use the terms "exclusion order" and "exclusion notice" interchangeably.

**4.** The Notice stated:

As a result of your conduct at Oregon State University, Corvallis, Oregon, you are no longer welcome on the Campus or any Oregon State University controlled property. You are hereby instructed to leave the Campus and may not return without approval in writing from the Manager of Security Services.

Should you be found anywhere upon the Campus of Oregon State University at any time without permission, you will be deemed to be trespassing and will be prosecuted pursuant to the provisions of O.R.S. 164.245.

Souders. Souders was not given a specific description of the complaints against him. Five days later, Delgado had a Temporary Stalking Protective Order issued against Souders in state court. Like the Foster order, this one did not ban Souders from the entire OSU campus. In the meantime, the Oregon State Police and OSU Security Services prepared and distributed a "SAFETY ALERT" flyer with a picture of Souders.

On February 28, 1996, Souders appealed the exclusion order in writing. He did not deny stalking Delgado or anyone else. On March 4, 1996, Souders was cited for criminal trespass by state police for being on the OSU campus in violation of the exclusion order.[5] On March 11, 1996, Lucero denied Souders' appeal in a letter citing the fact of the current Stalking Protective Order and his arrest for criminal trespass on March 4. Souders did not contact Lucero about the appeal, but on eight occasions after the letter of denial, Souders or his attorney wrote to her asking for permission to return to campus for specific events. He was refused on all but three occasions. In February 1997, Souders' request for a hearing contesting the second exclusion order was denied by Caroline Kerl.

Souders filed this § 1983 action in federal court. Defendants moved for summary judgment and Souders made a cross-motion for summary judgment. Following a hearing, Magistrate Judge Coffin granted defendants' motion, denied plaintiffs' cross-motion and dismissed the action. The court found that Souders had not stated a claim under the First or Fourteenth Amendments. In the alternative, the court held that defendants were qualifiedly immune from the damage claims. Souders timely appealed.

**5.** Similar charges followed his presence on campus on July 21, October 16, and October 30, 1996. Souders pleaded no contest to one of the four trespass charges, paid a $275 fine,

## STANDARD OF REVIEW

We review a grant of summary judgment de novo. *Margolis v. Ryan,* 140 F.3d 850, 852 (9th Cir.1998). Our review is governed by the same standard used by the trial court under Federal Rule of Civil Procedure 56(c). *Ghotra v. Bandila Shipping, Inc.,* 113 F.3d 1050, 1054 (9th Cir. 1997). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. *See Margolis,* 140 F.3d at 852.

## DISCUSSION

To establish a prima facie case under 42 U.S.C. § 1983, Souders must adduce proof of two elements: (1) the action occurred "under color of law" and (2) the action resulted in a deprivation of a constitutional right or a federal statutory right. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The first element is not disputed in this case: defendants are government employees being sued for conduct undertaken pursuant to their governmental duties and powers. *See Tennessee v. Garner,* 471 U.S. 1, 5–7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Defendants do contest the second element, specifically, that Souders' claim that in depriving him of his right to be on campus, the University did not provide the constitutionally adequate process he was due. We conclude that the exclusion order did not amount to the deprivation of a constitutional right and so Souders' § 1983 claim fails.

Much of Souders' argument hinges on the degree of openness of the University campus. He alleges that the University campus is effectively a public forum, like a street or a public park, which he had a right to visit. Evidence in the record cer-

and the other three trespass charges were dismissed. He did not challenge the validity of the exclusion notices or the trespass charges at the time of the trespass hearing.

tainly suggests that the University's policy is to maintain an open campus, and that members of the general public are welcome on campus without having to show identification or to register with campus officials. OSU's former Vice President stated in his deposition that:

> We have an open campus. As long as people stay within the bounds of behavior, this is acceptable. So whether somebody was in the library doing independent research or attending a public meeting, there would be no difference in the two situations.... We are an open campus, and we have a public university, and we are accessible to the public. I can't think of any general policies where we can exclude the public.

While the OSU campus may be open to the public, it does not follow that the University must allow all members of the public onto its premises regardless of their conduct. The Supreme Court has suggested that campuses are different from other public fora. In *Widmar v. Vincent,* 454 U.S. 263, 267–68, 102 S.Ct. 269, 70 L.Ed.2d 440 (1981), the Court said that a university opening its campus *to student groups* was required to justify discriminations and exclusions of certain groups under applicable constitutional norms. In dicta, the Court said that it has

> recognized that the campus of a public university, *at least for its students,* possesses many of the characteristics of a public forum.

> At the same time, however, ... [a] university differs in significant respects from public forums such as streets or parks or even municipal theaters. A university's mission is education, and decisions of this Court have never denied a university's authority to impose reasonable regulations compatible with that mission upon the use of its campus facilities. We have not held, for example, that a campus must make all of its facilities equally available to students and non-students alike, or that a university

must grant free access to all of its grounds or buildings.

*Id.* at 267 n. 5, 102 S.Ct. 269 (emphasis added) (citation omitted). *See also id.* at 278, 102 S.Ct. 269 ("[College and university] facilities are not open to the public in the same way that streets and parks are. University facilities-private and public-are maintained primarily for the benefit of the student body and the faculty.") (Stevens, J., concurring); *Greer v. Spock,* 424 U.S. 828, 836, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (rejecting the suggestion that "whenever members of the public are permitted freely to visit a place owned or operated by the Government, then that place becomes a 'public forum' for purposes of the First Amendment").

The Court has also recognized the authority and flexibility necessary for educational administrators to carry out the missions of their institutions. *See, e.g., Healy v. James,* 408 U.S. 169, 193–94 & n. 24, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972) ("[W]e do conclude that the benefits of participation in the internal life of the college community may be denied to any group that reserves the right to violate any valid campus rules with which it disagrees. In addition to the College administration's broad rulemaking power to assure that the traditional atmosphere is safeguarded, it may also impose sanctions on those who violate the rules."); *id.* at 203, 92 S.Ct. 2338 ("The government as ... school administrator may impose upon ... students reasonable regulations that would be impermissible if imposed ... upon all citizens. And there can be a constitutional distinction between infliction of criminal punishment, on the one hand, and the imposition of milder sanctions on the other....") (Rehnquist, J., concurring); *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 506, 507, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) ("[W]here state-operated educational institutions are involved, this Court has long recognized the need for affirming the comprehensive authority of the States and

of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools."); *Esteban v. Central Missouri State College,* 415 F.2d 1077, 1089 (8th Cir.1969) ("We hold that a college has the inherent power to promulgate rules and regulations; that it has the inherent power properly to discipline; that it has power appropriately to protect itself and its property; that it may expect that its students adhere to generally accepted standards of conduct.") (quoted with approval in *Healy,* 408 U.S. at 192, 92 S.Ct. 2338).

The record in this case offers no specific authority under which the University may exclude people from campus. Defendants cite to a rule which provides for the enforcement of university rules governing speech activities, but points to no broader general power to exclude from the campus persons who do not abide by the rules of conduct unrelated to speech. *Cf. People v. Leonard,* 62 N.Y.2d 404, 477 N.Y.S.2d 111, 465 N.E.2d 831, 834 (N.Y.1984) (finding university had promulgated rules authorizing exclusion from campus of an individual who, due to past conduct, was no longer welcome on campus); *Watson v. Board of Regents of Univ. of Colorado,* 182 Colo. 307, 512 P.2d 1162, 1164 (Colo.1973) (en banc) (denying on due process grounds the validity of an exclusion order issued pursuant to a university regulation which reserved to the university "the right to exclude those deemed detrimental to its well-being or incompatible with its function as an educational institution"). However, the University did have a "Policy and Procedure" document for "Trespass on Campus–Exclusion Orders." Even with no rule or regulation explicitly allowing the University to exclude people for certain conduct, it is reasonable to infer such authority from the University's policy regarding the issuance of exclusion orders.

█ Souders' argument—that he has a right to be on the OSU campus, regardless of his conduct, because he is a member of the general public and the campus is open to the public-goes too far. This cannot be the case. Whatever right he has to be on campus must be balanced against the right of the University to exclude him. The University may preserve such tranquility as the facilities' central purpose requires. *See* Laurence H. Tribe, *American Constitutional Law* 690 (1980). Not only must a university have the power to foster an atmosphere and conditions in which its educational mission can be carried out, it also has a duty to protect its students by imposing reasonable regulations on the conduct of those who come onto campus.

There is no precedent that clearly applies to the facts of this case. Virtually every decision dealing with the question of the openness of college campuses is a free speech case, where the analysis centers on whether a university may prohibit or regulate on campus the speech or assembly activities of certain individuals or groups-both student and non-student.

We find useful the reasoning of a case somewhat analogous to this one cited by both parties. In *United States v. Albertini,* 472 U.S. 675, 676, 105 S.Ct. 2897, 86 L.Ed.2d 536 (1985), some years after being barred from a military base, the defendant reentered the base during its annual open house for Armed Forces Day, a day on which members of the general public were allowed onto the base. The Court held that a person could be convicted for violating a statute which made it unlawful to reenter a military base after having been barred. *Id.* at 678, 105 S.Ct. 2897. The Court said that:

> The fact that respondent had previously received a valid bar letter [excluding him from the base unless he obtained written permission from base authorities] distinguished him from the general public and provided a reasonable grounds [sic] for excluding him from the base. That justification did not become less weighty when other persons were allowed to enter.... Where a bar letter is issued on valid grounds, a person may not claim immunity from its prohi-

bition on entry merely because the military has temporarily opened a military facility to the public.

*Id.* at 687, 105 S.Ct. 2897.[6] Following the reasoning in *Albertini*, we conclude that the exclusion order was issued by the University for the valid purpose of protecting its students, and not for conduct protected by the Constitution; that the University had not "so completely abandoned control that [its campus] became indistinguishable from a public street . . . ."; and that Souders was subject to the exclusion order's conditions.

Souders has not established a constitutionally protected interest in having access to the University. Because he had no constitutionally-protected interest, we need not decide whether the procedures employed in this case were adequate to afford the due process protection required before one can be deprived of a constitutionally-protected interest.

There is no hint in the record that the exclusion of Souders was based on anything other than his stalking behavior. In fulfilling its duty to protect students on campus, the University behaved reasonably in excluding Souders temporarily. Because we find that Souders has not established a prima facie case under § 1983, we need not reach the district court's alternate holding granting qualified immunity.

AFFIRMED.

---

**6.** We distinguish the decision of the New York Court of Appeals in *People v. Leonard*, 62 N.Y.2d 404, 477 N.Y.S.2d 111, 465 N.E.2d 831, 835 (N.Y.1984). In that case, the court held that to establish that the issuance of a persona non grata letter to a non-student was valid, "the People must demonstrate that the particular order of exclusion had a legitimate basis and that, considering the nature and use of the subject property, its enforcement did not unlawfully inhibit or circumscribe the defendant from engaging in constitutionally or statutorily protected conduct." *Id.* Mere presumption that the authorized public official had acted in a lawful manner was not enough, the court said. *Id.* Unlike in *Leonard*, the University here has offered substantial evidence indicating that the exclusion notice had a legitimate purpose, rationally related to the protection of its students. Souders has made no showing or indeed allegation of impermissible motive on the part of the University.