992 So.2d 828 (2008)
Penelope LANKHEIM, Appellant,
v.
FLORIDA ATLANTIC UNIVERSITY, BOARD OF TRUSTEES, Appellee.
No. 4D07-3276.
District Court of Appeal of Florida, Fourth District.
September 24, 2008.
Rehearing Denied November 14, 2008.
*830 Todd R. Schwartz of Ginsberg & Schwartz, Pembroke Pines, for appellant.
Derek R. Young and Joseph L. Ackerman of Buckingham, Doolittle & Burroughs, L.L.P., West Palm Beach, for appellee.
TAYLOR, J.
Penelope Lankheim appeals a final summary judgment entered in favor of Florida Atlantic University, Board of Trustees (FAU) on her claim for injunctive relief, contending that a trespass order issued against her while she was enrolled in courses on FAU's campus denied her access to the campus without procedural due process. We agree and reverse for further proceedings.
FAU is a member of the State University System of Florida. It is a public university with campuses in Palm Beach and Broward counties. Palm Beach Community College (PBCC) has its south campus on the north end of FAU's Boca Raton campus. FAU's four-story library is open to the public. PBCC has no library on this campus, but PBCC students are allowed to use the FAU library and campus through a cooperative relationship between the two schools.
Plaintiff, Penelope Lankheim, received her B.S. degree from FAU in 1980. In 1985, she received a medical degree from the University of Miami and was issued her medical license from the State of Massachusetts in August 1986. In June 1987, Lankheim was hospitalized for psychiatric treatment for three days at a mental health center in Massachusetts. In July 1987, the Massachusetts Board of Medicine entered an emergency summary suspension of Lankheim's license for a mental disorder. That suspension remains in effect. In August 1987, the Massachusetts Board of Nursing issued Lankheim a license to practice as a registered nurse.
Lankheim described the FAU library as her "stomping ground" for the last thirty years. From 1992 through 1995, Lankheim was enrolled in continuing education courses at FAU. From 1997 through 1999, Lankheim was enrolled in the graduate program for a master's degree in nursing at the FAU College of Nursing. She was six credits short of receiving her degree when she was dismissed from the program for receiving a failing grade. From 1999 through 2000, Lankheim was enrolled at FAU as a non-degree seeking student, taking continuing education courses. During this time, Lankheim was involved in an academic appeal with the FAU College of Nursing, which entailed a number of meetings with her Graduate Advisor, Ellis Youngkin, the Dean of the School of Nursing, Anne Boykin, and FAU's Associate Provost for Academic Affairs, James Fisher. Although Lankheim asserted that she conducted herself in a polite manner at all times during these proceedings and denied making any threats of physical violence, some members of the faculty of the College of Nursing were afraid of Lankheim. Lankheim had repeatedly stated, "I'm not a violent type of person, I'm more of a Ghandi type of person, that's my approach, I really would hate to hurt FAU." Some FAU faculty members and administrators perceived her statements as veiled threats. *831 They were also concerned about her attempts to enlist other students in an effort to "get Dean Boykin." In its answers to requests for admissions, FAU admitted that Lankheim did not physically threaten Dr. Youngkin or Dr. Boykin, but stated that Dr. Youngkin and Dr. Boykin were afraid that Lankheim might threaten them.
On July 7, 2000, FAU issued Lankheim a no trespass warning. The warning effectively banned Lankheim from the FAU campus and prevented her from attending any of her classes. Lankheim was arrested on three occasions for violating the no trespass warning. She was convicted of the three offenses in a single trial and was placed on probation. While the criminal charges were pending, Lankheim filed a civil suit against FAU, claiming that the trespass warning and her subsequent arrests violated her civil rights under 42 U.S.C. § 1983. Ultimately, the parties entered into a stipulation of dismissal with prejudice in January 2002.
From 2003 through 2004, Lankheim was enrolled at PBCC and attending classes on FAU's Boca Raton campus. During this time, Lankheim used the library on FAU's campus without incident. On April 29, 2004, while Lankheim was a registered student at PBCC, she attended an Alumni Reception at the President's Mansion on FAU campus by express invitation. FAU concedes that she was not trespassing at that time. FAU also concedes that she was not disruptive that evening and participated as any other invited guest. After leaving the reception, Lankheim was met by a campus police officer, Sergeant Derrick Paul, who verbally issued Lankheim a trespass warning. The officer explained that the new warning was based on the fact that she had previously been arrested for trespass and had frightened certain officials in the nursing school. Chief Danser had ordered that the new warning be given.
On May 23, 2004, as Lankheim was leaving FAU's library after checking out books, she was arrested by campus police and charged with trespassing. In October 2005, plaintiff was tried by a jury on the new trespassing charge, but the jury was unable to reach a verdict. The trial court declared a mistrial and the state dismissed the case.
On November 6, 2005, Lankheim visited the FAU Boca campus to return overdue library books and to view an exhibit at the FAU art gallery. The campus police issued Lankheim a written trespass warning, which banned Lankheim from any of the FAU campuses for an indefinite period of time. FAU had expressed concerns about Lankheim's being a danger to herself or others because of her "erratic" behavior before the Department of Health in 2003-2005 and certain "prior mental history." In answers to interrogatories, FAU stated, "FAU is in possession of documents reflecting psychiatric examination(s) of the Plaintiff which would show that the Plaintiff can be considered to be a danger to herself and to others." FAU has not made these documents part of the summary judgment record.
The subject trespass warnings have not only denied Lankheim access to the library, art galleries, university theaters, and other resources generally open to the public, but, according to Lankheim, have also amounted to an expulsion from her PBCC courses without any opportunity to challenge the validity of the trespass warnings.
On January 6, 2006, Lankheim filed a verified complaint for injunctive relief. In that complaint, she alleged that her due process rights were violated because:
b. The Florida Administrative Code, (6C5-7.008 Trespass and Loitering), *832 which allows the Office of Provost, through the University's police to issue Trespass warnings, does not contain any administrative provisions/procedure to contest or challenge such warnings.
Lankheim alleged that without such a procedure, not only are her due process rights facially denied, but that such a situation is an:
... open invitation for abuse since any individual, who may be deemed "unpopular" or hold views contrary to that of the University, could be banned from campus and constructively expelled at the whim or capriciousness of a University professor, official or police officer without any recourse....
Lankheim sought permanent injunctive relief to dissolve the existing trespass warning, permit her to enter any FAU or PBCC campus, and permit her to enroll in any course (other than those offered by the School of Nursing). This appeal concerns only her request to dissolve the trespass warning and permit her access to the FAU or PBCC campus.
FAU moved for summary judgment. Lankheim opposed the motion and argued at the hearing on the motion that she has a property right to go on campus to use the library and other publicly available facilities. FAU countered that Lankheim has no legal right to gain access to the campus, and that, absent discriminatory motive, it can exclude anyone it chooses.
Evidence before the court included the testimony of an FAU campus police officer, who said that he can issue a trespass warning at the behest of a housing administrator, dean, or other campus official. The campus police evaluate the situation, and if the individual has been involved in criminal activity or disruptive or suspicious behavior, the campus police can issue trespass warnings. The Florida Administrative Code has a section on "Disruptive Conduct," but there are many types of conduct which can result in a trespass warning. According to the testimony of one campus police officer, a presidential memorandum issued in 2001 listed thirteen examples of conduct that could result in trespass warnings. The campus police also have the authority to lift a warning. Sergeant Paul testified in a deposition taken during criminal trespass proceedings that FAU trespass warnings are only enforceable for one year after they are issued.
Pursuant to the Florida Administrative Code, an FAU student wishing to challenge a grade has several steps available, including a right to a hearing before a committee comprised of two faculty members, two students, and a dean or chair of the committee. However, there is no similar administrative procedure for challenging a trespass warning.
On June 7, 2007, the trial court entered a written order granting summary judgment in favor of FAU. In its order, the court rejected FAU's contention that res judicata barred Lankheim from challenging the manner in which the 2004 and 2005 trespass warnings were issued. The court concluded, however, that Lankheim had no clear legal right to the relief requested as to these warnings because she has no property right in post-secondary education.
The standard of review of an order granting summary judgment is de novo. Shreffler v. Philippon, 873 So.2d 1280, 1281 (Fla. 4th DCA 2004). A trial court may enter summary judgment only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Id. "[I]f there is the slightest doubt or conflict in the evidence, then summary judgment is not available." Id.
*833 Title 6 of the Florida Administrative Code contains regulations of the Florida Department of Education. Subtitle 6C5 is reserved for regulations governing Florida Atlantic University. Rule 6C5-7.008 is entitled "Trespass and Loitering." The trespass rule begins with the following definitions:
(a) University persons. Those persons who are faculty, staff, students or employees of Florida Atlantic University, or Palm Beach Junior College [i.e., PBCC] and persons on campus fulfilling contractual obligations or acting as members of registered University organizations.
(b) Non-University persons. All other persons who are not classified above as University persons.
Fla. Adm. Code R. 6C5-7.008 (2008). The key remaining provision is the following:
(3) Non-University persons are allowed to use the public areas of the University during normal business hours or when present on campus for authorized University business, and are allowed to attend lectures, plays and other activities on the University campus in the designated buildings or areas when such attendance is permitted by the sponsoring organization. It is the responsibility of the Vice-President for Administrative Affairs or his/her designee to control the use of all campus areas. Non-University persons are not allowed on campus except as permitted by this rule. Non-University persons on campus for other than authorized University business will be ordered to leave if their continued presence on the campus is deemed by the Vice-President for Administrative Affairs or his/her designee to be disruptive to the orderly conduct of the University.
The rule does not address when "University persons" can be barred from campus, but presumably their rights are greater than those of "Non-University persons." See, e.g., Souders v. Lucero, 196 F.3d 1040 (9th Cir.1999) (holding that a non-student alumnus had no constitutionally-protected interest in having access to the Oregon State University's campus and, thus, his exclusion from campus could not violate the due process clause); People v. Leonard, 62 N.Y.2d 404, 477 N.Y.S.2d 111, 465 N.E.2d 831, 834 (1984) (stating that the defendant, who was not a student or employee at a state university, had no property or liberty interest in being present on campus grounds; therefore, the order excluding him from campus prior to a hearing on its issuance was not violative of due process); Cf. Watson v. Board of Regents, 182 Colo. 307, 512 P.2d 1162 (1973) (holding that a non-student's right to access to university functions and facilities could not be permanently denied without due process of law).
The Fourteenth Amendment to the U.S. Constitution and Article I, section 9 of the Florida Constitution provide that no person shall be deprived "of life, liberty or property without due process of law." "`Liberty' and `property' are broad and majestic terms.... `[T]hey relate to the whole domain of social and economic fact....'" Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (quoting Natl. Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 646, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (Frankfurter, J. dissenting)).
Protected interests in property are not usually created by the Constitution, but, rather, are created, and their dimensions defined by, an independent source "such as state statutes or rules entitling the citizen to certain benefits." Goss v. Lopez, 419 U.S. 565, 572, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). As the Florida *834 Supreme Court has more recently explained:
The notion of a property interest encompasses a variety of valuable interests that go well beyond the traditional view of property. However, these interests do not make up some exclusive list; rather, they are defined in light of existing rules or understanding.
Moser v. Barron Chase Secies., Inc., 783 So.2d 231, 236, n. 5 (Fla.2001) (citations omitted). As the third district explained in Metro. Dade County v. Sokolowski, 439 So.2d 932, 934 (Fla. 3d DCA 1983):
A property interest may be created by statute, ordinance or contract, Bishop v. Wood, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) as well as by policies and practices of an institution which supports claims of entitlement. Perry v. Sinderman [Sindermann], 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).
Even where a state is not required to extend a certain benefit to its people, after having chosen to extend it, the state may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct occurred. Goss, 419 U.S. at 574, 95 S.Ct. 729.
The record shows that Lankheim was enrolled in and attending PBCC classes on the FAU campus in 2003 and 2004. It further establishes that the 2004 trespass warning was issued while Lankheim was taking these courses at PBCC. Lankheim's verified complaint suggests that this 2004 trespass warning required her to withdraw from her PBCC courses.
The trial court relied on Valadez v. Graham, 474 F.Supp. 149, 157 (M.D.Fla.1979), in finding that Lankheim has no property right in a post-secondary education that is protectable under Article I, Section 9 of the Florida Constitution. In Valadez, the children of Mexican-American migrant workers challenged public school policies regarding late-entering junior and high school students. The district court noted that under section 228.051, Florida Statutes (1977), students have a right to a public education consisting of "thirteen consecutive years of instruction," and that "this right cannot be denied except by due process of law." Id. Here, the trial court apparently reasoned that, because there exists no statutory or constitutional right to a post-secondary education, a post-secondary education is not a property right protected by the due process clause. The issue here, however, is not whether Lankheim has a constitutional or statutory right to a post-secondary education, but whether Lankheim, as a student already enrolled at a state college on a state university campus, has a legitimate claim of entitlement to continued enrollment at the school such that she could demand the procedural protections of due process. As mentioned above, the Fourteenth Amendment's procedural protection may extend to interests that a person has already acquired in specific benefits created by sources such as state statutes or university rules and policies. See Roth, 408 U.S. at 577, 92 S.Ct. 2701.
FAU does not dispute that Lankheim had met her contractual obligations for enrollment at PBCC and that she was otherwise in good standing as a student. The trial court thus erred in concluding, as a matter of law, that Lankheim lacked a protectable property interest in continued enrollment at PBCC. And, because FAU had extended her access to its campus and facilities, through its relationship with PBCC and campus policies, FAU could not permanently deprive her of these benefits without giving her, at a minimum, notice and an opportunity for a hearing to contest its decision to deny her access. See Woody v. Burns, 188 So.2d 56, 58 (Fla. 1st *835 DCA 1966) ("constitutional due-process requires notice and opportunity for hearing before a student at a tax-supported college or university can be expelled for misconduct."); see also Wallace v. Florida A & M Univ., 433 So.2d 600, 602 (Fla. 1st DCA 1983).
We recognize the right of university officials to exclude those whose conduct disrupts the orderly functioning of the university or threatens the safety, security, and welfare of their students, staff, and faculty. Thus, though due process ordinarily requires notice and an opportunity to be heard prior to the deprivation of a property right, where university officials believe that emergency or exigent circumstances exist, such that it is impractical for them to grant a prior hearing regarding the exclusion of a student from access to the university, such right of access may be suspended without a prior hearing, so long as a hearing is thereafter provided with reasonable promptness. See e.g. Goldberg v. Kelly, 397 U.S. 254, 264, n. 10, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (where harm to the public is threatened and the private interest infringed is reasonably deemed to be of less importance, an official body can take summary action pending a later hearing); Braxton v. Mun. Court, 10 Cal.3d 138, 109 Cal.Rptr. 897, 514 P.2d 697, 700 (1973) (holding that where exigency exists post-exclusion hearing must be held as soon as reasonably possible "not later than seven days following a request by the person excluded.").
Based on the foregoing, we reverse the summary judgment and remand this cause for further proceedings.
Reversed and Remanded.
STONE and GROSS, JJ., concur.