10-4201-cv
Kalfus v. N.Y. & Presbyterian Hosp.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 13th day of April, two thousand twelve.

PRESENT:  ROBERT D. SACK,
                REENA RAGGI,
                CHRISTOPHER F. DRONEY,[*]
                            *Circuit Judges*.

-------------------------------------------------------------------------
ROBERT KALFUS,
                            *Plaintiff-Appellant*,


                    v.                                              No. 10-4201-cv


THE NEW YORK AND PRESBYTERIAN HOSPITAL, STEVEN RODRIGUEZ, Special Patrolman Sergeant, ARNOLD PALMER, Special Patrolman, JOHN DOES 1–4, Special Patrolman, THE CITY OF NEW YORK, LIEUTENANT EUGENE WHYTE, JOHN DOES 5–8, New York City Police Officers, JARRETT OMONEUKANRIN,
                            *Defendants-Appellees*.
-------------------------------------------------------------------------
APPEARING FOR APPELLANT:        ILANN MAAZEL (O. Andrew Wilson, *on the brief*), Emery Celli Brinckerhoff & Abady LLP, New York, New York.

---

[*] The Honorable Roger J. Miner, originally a member of this panel, died on February 18, 2012. The Clerk has designated, by random selection, the Honorable Christopher F. Droney to replace him. See 2d Cir. IOP E(b).

APPEARING FOR APPELLEES: KENNETH KELLY (James Treece, *on the brief*), Epstein Becker & Green, P.C., New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Deborah A. Batts, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the district court entered on October 12, 2010, is AFFIRMED.

Robert Kalfus appeals from an award of summary judgment in favor of defendants on claims that his rights were violated by false arrest, malicious prosecution, and excessive force. We review an award of summary judgment de novo, "construing the evidence in the light most favorable to the non-moving party and drawing all reasonable inferences in its favor." Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011). We will uphold such an award only if the record reveals no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

Kalfus was a free-lance photographer for the New York Post. In May 2007, a former major league baseball player, Frank Torre, was hospitalized in the defendant hospital for treatment in connection with a kidney transplant. His brother is Joe Torre, who was then the manager of the New York Yankees. The Post sent Kalfus, along with a reporter, to the

hospital. Kalfus was supposed to attempt to photograph Joe Torre while he visited his brother.

Kalfus arrived in front of the hospital building in the late morning. He waited for about five hours outdoors on a ledge beside the main steps, which run from the main roadway in front of the Hospital to the covered, visitors' driveway. During that time, in addition to people using the steps for entrance into and egress from the Hospital, there were also people using them for recreational purposes, such as smoking and eating.

Unbeknownst to Kalfus, sometime that afternoon, a member of the media had tried to elude security to gain unauthorized access to the hospital building in order to cover the Torre story. He was apparently intercepted and turned away. The defendant patrolmen, who worked a shift that began late in the afternoon, were made aware of the Torre situation and the reporter's attempt to gain unauthorized access. They were therefore concerned about the presence on hospital grounds of members of the media.

A hospital special patrolman correctly identified Kalfus as a member of the media. He approached Kalfus and told him that he was on private property and that he would have to leave. Kalfus remonstrated that he was sitting peacefully where many other people were standing or perhaps sitting and attending to their own affairs. He refused to leave.

Kalfus was again told by hospital patrolmen to leave hospital property. He refused, repeatedly making snide and sarcastic statements, and threatening legal action. The patrolmen then sought to arrest Kalfus for trespass, and to restrain him by handcuffing his hands behind his back. Kalfus attempted to evade handcuffing. He did not attempt to flee.

3

The patrolmen pushed Kalfus on to his stomach in order to handcuff him, which they then did by pulling his arms up behind his back. They then stood him up and walked him across the street to another building, where the main hospital security office was located. Eventually Kalfus was handed over to the New York City police.

1. False Arrest

Kalfus contends that no probable cause supported his arrest for trespass because defendants' order to vacate New York-Presbyterian Hospital's private premises was not lawful under either the First Amendment or New York's parallel rights to freedom of speech and the press. See Jenkins v. City of N.Y., 478 F.3d 76, 84 (2d Cir. 2007) (stating that existence of probable cause is complete defense to false arrest claim); N.Y. Penal Law §§ 140.00(5); 140.05 (defining criminal trespass). Kalfus submits that the hospital's special patrolmen targeted him for expulsion from the hospital steps, which were open to the public, because of his press status. In the absence of any government nexus to the challenged action, however, the First Amendment does not prevent a property owner from restricting press access to private property. See generally Hudgens v. NLRB, 424 U.S. 507, 513-21 (1976); Lloyd Corp. v. Tanner, 407 U.S. 551, 567 (1972); see also Hotel Emps. & Rest. Emps. Union v. City of N.Y. Dep't of Parks & Recreation, 311 F.3d 534, 543-44 (2d Cir. 2002). Even if the hospital permitted members of the public to use the steps, it was not unlawful for the hospital to expel Kalfus for failure to comply with hospital policy requiring members of the media to obtain prior authorization before entering the premises. See Lloyd Corp. v. Tanner, 407 U.S. at 569 (stating that private property does not "lose its private character merely

4

because the public is generally invited to use it for designated purposes"). Nor was the hospital's order transformed into state action merely because the special patrolmen subsequently acted under color of state law when they arrested Kalfus. Cf. id. at 554, 556, 570 (holding no state action in private property owner's prohibition on handbill distribution despite involvement of mall security officers invested with police authority in communicating prohibition).

People v. Leonard, 62 N.Y.2d 404, 477 N.Y.S.2d 111 (1984), on which Kalfus relies, warrants no different conclusion under New York law because the free speech claim there at issue concerned a public university's exclusion of a former student from a "publicly owned and maintained" campus that was "open to the public." Id. at 410-11, 477 N.Y.S.2d at 115 (internal quotation marks omitted). Thus, Leonard provides no support either for Kalfus' contention that free speech and press protections extend to private property, such as the hospital steps here at issue, or for his argument that New York law affords more expansive free speech and press protections for activities on private property than the federal Constitution. See SHAD Alliance v. Smith Haven Mall, 66 N.Y.2d 496, 505-06, 498 N.Y.S.2d 99, 105-06 (1985) (holding that state rights are equivalent to federal rights in this area); accord Downs v. Town of Guilderland, 70 A.D.3d 1228, 1230, 897 N.Y.S.2d 264, 266-67 (3d Dep't 2010).

In sum, because the order expelling Kalfus from the hospital's private property did not violate either the Constitution or New York law, the district court correctly concluded that Kalfus's violation of the hospital's order provided probable cause to support his arrest for trespass and, thus, properly dismissed the false arrest claim.

5

2.      Malicious Prosecution

Because probable cause existed to arrest Kalfus for trespass, his malicious prosecution claim based on defendant Sergeant Steven Rodriguez's swearing out a criminal complaint for that offense also fails.  See Manganiello v. City of N.Y., 612 F.3d 149, 161-62 (2d Cir. 2010) (recognizing probable cause as "complete defense to a claim of malicious prosecution in New York" (internal quotation marks and brackets omitted)).   In addition, Kalfus does not point to any record evidence from which a reasonable jury might infer that Rodriguez acted with "actual malice."  Id. at 161.  Indeed, the assistant district attorney, whom Kalfus does not charge with malice, approved the filing of the complaint.  Accordingly, the district court correctly dismissed the malicious prosecution claim.

3.      Excessive Force

Kalfus submits that a reasonable jury could conclude that the hospital special patrolmen used excessive force in effecting his arrest in violation of the Fourth Amendment. See Graham v. Connor, 490 U.S. 386, 395 (1989); accord Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).   The hospital security video, which we have made available at http://www.ca2.uscourts.gov/video.htm, and Kalfus's own audio recording of the arrest, belie this claim.  See Scott v. Harris, 550 U.S. 372, 378-81 (2007) (concluding that video, audio, or other documentary evidence can be considered on summary judgment and may be credited over non-movant's account if it is so "blatantly contradicted by [this evidence], . . . that no reasonable jury could believe [that account]"); accord Zellner v. Summerlin, 494 F.3d 344, 371 (2d Cir. 2007).  These recordings demonstrate that Kalfus resisted arrest by refusing to

6

stand up or to permit himself to be handcuffed, and that the patrolmen used only reasonable force to overcome Kalfus's resistance.  See Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000) ("The force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer.").  The video further shows that to effect the arrest, officers turned Kalfus onto his stomach, pulled his arms behind his back, placed handcuffs on him, and lifted him onto his feet by pulling on his upper arms, sweatshirt, and waist.  No reasonable factfinder could conclude that such actions were excessive in the circumstances.

Kalfus's challenges to this documentary evidence are unavailing.  The video of the arrest is not so obscured by plants or cut short by interruptions as to preclude an assessment of the reasonableness of the force employed.  While the audio recording does reveal that Kalfus was yelling during the arrest, nothing on the video recording supports an inference that his screams were occasioned by excessive force.  Nor does Kalfus's shoulder injury demonstrate excessive force.  Kalfus points to nothing in the record to refute his own surgeon's testimony that the rotator cuff tear was an extension of a pre-existing tear, about which Kalfus failed to inform the arresting officers.  Because the patrolmen had no reason to know that Kalfus's existing shoulder injury might be aggravated if his arms were pulled or he were handcuffed, the amount of force that they used to respond to Kalfus's resistance to arrest could not be deemed objectively "unreasonable" by any reasonable jury.  Tracy v. Freshwater, 623 F.3d at 96; see also Owens v. Colburn, 860 F. Supp. 966, 972-73 (N.D.N.Y. 1994) (granting summary judgment on excessive force claim where arrestee failed to warn

officer of preexisting back injury before handcuffing), aff'd 60 F.3d 812 (2d Cir. 1995).

Accordingly, the district court correctly dismissed the excessive force claim.

4.    Conclusion

We have considered Kalfus's remaining arguments on appeal and conclude that they are without merit.  Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court