985 So.2d 1078 (2008)
James LESCHER, Petitioner,
v.
FLORIDA DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES, Respondent.
No. SC07-32.
Supreme Court of Florida.
July 3, 2008.
*1079 Richard W. Springer and Catherine Mazzullo of Richard W. Springer, P.A., Palm Springs, FL, for Petitioner.
Judson M. Chapman, General Counsel and Heather Rose Cramer, Assistant General Counsel, Department of Highway Safety and Motor Vehicles, Lake Worth, FL, for Respondent.
CANTERO, J.
In this case we consider whether a statutory amendment constitutes an ex post facto law. Florida law provides that after four convictions for driving under the influence (DUI), the defendant's driver's license shall be permanently revoked. After five years such drivers previously could apply for hardship licenses. The Legislature, however, recently amended the statute to remove that driver's license eligibility. The petitioner, who could have applied for a hardship license before the amendment, argues that the amendment constitutes an ex post facto law. Because the prohibition against ex post facto laws applies only to criminal punishments, however, and the provisions at issue do not constitute punishment, we conclude that the amendment is not an ex post facto law.
Below, we first explain the relevant factual, statutory, and procedural history of this case. Then we apply the test delineated in Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997), to the question of whether driver's license revocation and the unavailability of a hardship license constitutes criminal punishment.

I. FACTS AND RELEVANT STATUTORY HISTORY
Lescher was convicted of DUI four times: in 1979, 1983, 1991, and 2000. Section 322.28(2)(e), Florida Statutes (2000), required that "[t]he court shall permanently revoke the driver's license or driving privilege of a person who has been convicted four times" for this offense. After his 2000 conviction, therefore, Lescher's license was permanently revoked.
Section 322.271(4), Florida Statutes (1997), formerly provided that drivers whose licenses had been permanently revoked under section 322.28(2)(e) could, after five years, petition for reinstatement of the "driving privilege."[1] A petitioner had *1080 to establish that he qualified. The Department of Highway Safety and Motor Vehicles (Department or DHSMV) then had the "discretion" to issue a "hardship license" with specific restrictions. See § 322.271(4), Fla. Stat. (1997).[2] In 1998 before Lescher's license was revokedthe Legislature amended this provision by eliminating the eligibility for hardship licenses for drivers with four DUI convictions. See 322.271(4), Fla. Stat. (Supp. 1998). However, in Florida Department of Highway Safety & Motor Vehicles v. Critchfield, 842 So.2d 782 (Fla.2003), we held invalid the session law containing the amendment because of a single-subject violation. In effect, our holding revived the pre-1998 law permitting hardship licenses. Shortly after our decision in Critchfield, however, the Legislature readopted the amendment.[3] The net effect is that when Lescher's license was revoked, he could have applied for a hardship license after five years.
In August 2005, although five years had not yet elapsed since his license was revoked, Lescher petitioned for a hardship license. The Department denied the petition, concluding that the applicable statute was the one in effect at the time of his application. Under that statute, Lescher was not eligible for a hardship license.[4]
The circuit court denied Lescher's petition for a writ of certiorari. On review, the Fourth District Court of Appeal denied a petition as well, finding no ex post facto violation. See Lescher v. Dep't of Highway Safety & Motor Veh'ls, 946 So.2d 1140, 1142 (Fla. 4th DCA 2006). However, noting that the court had "a number" of similar petitions and "anticipat[ing] that other districts will also," the court certified the following question as one of great public importance:
Does the amendment to section 322.271(4), Florida Statutes, which eliminated hardship driver's licenses effective July 1, 2003, violate the prohibition *1081 against ex post facto laws as to persons who could have applied for a hardship license before the amendment became effective?
Id. We have jurisdiction and granted review. See art. V, § 3(b)(4), Fla. Const; Lescher v. Dep't of Highway Safety & Motor Veh'ls, 949 So.2d 198 (Fla.2007) (granting review).

II. CIVIL PENALTY OR CRIMINAL PUNISHMENT?
Both the United States and Florida Constitutions prohibit ex post facto laws. See U.S. Const. art. I, § 10; art. I, § 10, Fla. Const. The United States Supreme Court has defined an ex post facto law as one that (a) operates retrospectively, and (b) "make[s] innocent acts criminal, alter[s] the nature of the offense, or increase[s] the punishment." Collins v. Youngblood, 497 U.S. 37, 46, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990); accord Cal. Dep't of Corr. v. Morales, 514 U.S. 499, 506 n. 3, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995) ("After Collins, the focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of `disadvantage,' ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable."). Thus, the prohibition on ex post facto laws applies only to criminal or penal provisions. See Westerheide v. State, 831 So.2d 93, 99 (2002). The answer to the certified question, therefore, depends on whether the unavailability of a hardship license to a driver whose license was revoked after four DUI convictions is a civil remedy or criminal punishment. "Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction." Hudson, 522 U.S. at 99, 118 S.Ct. 488. Under Hudson, the first step in the analysis is to ascertain the legislature's intent, and then to determine the effect of the statute under the following seven factors:
(1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment  retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether it appears excessive in relation to the alternative purpose assigned."
Id. at 99-100, 118 S.Ct. 488 (quoting Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)); see Goad v. Fla. Dep't of Corrections, 845 So.2d 880 (Fla.2003) (concluding under a Hudson analysis that sections of the Florida Civil Restitution Lien and Crime Victims' Remedy Act did not operate as a criminal punishment). We now apply this analysis to the DUI permanent revocation provision, section 322.28(2)(e), and the hardship license provision, section 322.271(4).

A. LEGISLATIVE INTENT
As stated above, in determining the nature of these provisions, the first question is whether the Legislature indicated whether these statutes were civil or criminal. See Hudson, 522 U.S. at 99, 118 S.Ct. 488. Chapter 322, Florida Statutes, regulates driver's licenses, and the Legislature has charged the Department with the chapter's administration and enforcement. The Legislature plainly stated its intent:
It is declared to be the legislative intent to:

*1082 (1) Provide maximum safety for all persons who travel or otherwise use the public highways of the state.
(2) Deny the privilege of operating motor vehicles on public highways to persons who, by their conduct and record, have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state and the orders of the state courts and administrative agencies.
(3) Discourage repetition of criminal action by individuals against the peace and dignity of the state, its political subdivisions, and its municipalities and impose increased and added deprivation of the privilege of operating motor vehicles upon habitual offenders who have been convicted repeatedly of violations of traffic laws.
§ 322.263, Fla. Stat. (2005). The Legislature further provided that "[t]his chapter [322] shall be liberally construed to the end that the greatest force and effect may be given to its provisions for the promotion of public safety." § 322.42, Fla. Stat. (2005).
It is apparent that in chapter 322 the Legislature intended not to punish but to protect the public through a regulatory regime governing driver's licenses. This intent controls absent the "clearest of proof" on the face of the statute belying it. See Hudson, 522 U.S. at 100, 118 S.Ct. 488 ("`[O]nly the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." (quoting United States v. Ward, 448 U.S. 242, 249, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980))); Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960) (stating that "only the clearest proof could suffice to establish the unconstitutionality of a [civil] statute" as criminally punitive and that "[j]udicial inquiries into Congressional motives are at best a hazardous matter, and when that inquiry seeks to go behind objective manifestations it becomes a dubious affair indeed"); Westerheide, 831 So.2d at 100 ("While `the civil label is not always dispositive,' the Legislature's stated intent should only be rejected where the challenging party presents `the clearest proof' that `the statutory scheme [is] so punitive either in purpose or effect as to negate [the State's] intention' that the proceeding be civil." (quoting Allen v. Illinois, 478 U.S. 364, 369, 106 S.Ct. 2988, 92 L.Ed.2d 296 (1986))).

B. APPLYING THE HUDSON FACTORS
To determine whether the "clearest of proof" negates the Legislature's intent to create a civil remedy, we apply the seven Hudson factors. Two overriding principles govern this analysis: first, "no one factor should be considered controlling;" and second, we evaluate the statute on its face, not on "`the character of the actual sanctions imposed.'" Hudson, 522 U.S. at 101, 118 S.Ct. 488 (quoting and disavowing United States v. Halper, 490 U.S. 435, 447, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)). We address each factor in turn.

1. Affirmative Disability or Restraint
The first factor is whether the sanction involves an affirmative disability or restraint. Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. Neither section 322.28(2)(e) (the license revocation provision) nor section 322.271(4) (the hardship license provision) imposes an affirmative disability as the Supreme Court has applied this factor. See Smith v. Doe, 538 U.S. 84, 100, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) (concluding that a state's sex offender registration statute "impose[d] no physical restraint, and so does not resemble the punishment of imprisonment, which is the paradigmatic affirmative disability or restraint" *1083 and its "obligations are less harsh than the sanctions of occupational debarment, which we have held to be nonpunitive"); see also Hudson, 522 U.S. at 104, 118 S.Ct. 488 (concluding that a bar to working in the banking industry was not an affirmative disability or restraint "as that term is normally understood"); Flemming, 363 U.S. at 614, 80 S.Ct. 1367 (finding that a termination of Social Security benefits was not an affirmative disability); Turner v. Glickman, 207 F.3d 419, 431 (7th Cir.2000) (concluding that a denial of noncontractual federal benefits, such as food stamps, because of felony convictions is not an affirmative disability or restraint). The loss of one's driving privilege is inconvenient. In fact, we have recognized that the revocation of one's driver's license constitutes a substantial hardship. See City of Miami v. Aronovitz, 114 So.2d 784, 787 (Fla.1959) ("It is a privilege to hold a license to drive. It is a severe handicap to be compelled to do without one."); Smith v. City of Gainesville, 93 So.2d 105, 106 (Fla.1957) ("True the recalcitrant law violator might feel the pain of the loss of a valuable privilege."). Nevertheless, the loss of the driving privilege is not an affirmative disability. See Brewer v. Kimel, 256 F.3d 222, 228 (4th Cir.2001) (citing Hudson in holding "that revocation of a driver's license does not involve an `affirmative disability'"). If the requirement to register as a sexual offender, the loss of the ability to practice in a chosen profession, the termination of Social Security benefits, and the denial of other federal benefits such as food stamps do not constitute an affirmative disability or restraint, then neither does the inability to apply for a hardship license after one's driver's license has been permanently revoked.

2. The Historical View
The second factor is whether the sanction has historically been regarded as a punishment. Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. As to this factor, we have consistently viewed possession of a driver's license as a privilege and its revocation as a civil remedy necessary for the public's protection.
"Remedial sanctions may be of varying types. One which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted." Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 82 L.Ed. 917 (1938). In Smith v. City of Gainesville, 93 So.2d 105 (Fla. 1957), we were squarely faced with the question of whether license revocation constitutes punishment. We stated that a "driver's license is a privilege, subject to proper regulations" and "does not endow the holder thereof with an absolute property right in the use of the public highway." Id. at 106. Referring specifically to the danger that drunken drivers pose to other drivers and addressing the nature of license revocation, we said:
It is this aspect of protecting the public, rather than as punishment for the offender, that courts have unanimously recognized as justification for revoking drivers' licenses upon conviction of certain offenses. True the recalcitrant law violator might feel the pain of the loss of a valuable privilege. However, the imposition of pain is not the objective of this law. On the contrary, its primary purpose is to relieve the public generally of the sometimes death-dealing pain recklessly produced by one who so lightly regards his licensed privilege.
Id. at 106-07. We have since reiterated this view. See Lite v. State, 617 So.2d 1058, 1060 (Fla.1993) ("[T]here is no property interest in possessing a driver's license. Rather, driving is a privilege, and the privilege can be taken away or encumbered as a means of meeting a legitimate *1084 legislative goal."); Zarsky v. State, 300 So.2d 261, 263 (Fla.1974) ("It has been stated that revocation of a driver's license is not regarded as punishment (cruel, unusual or otherwise) of the offender but as an aspect of protecting the public."); City of Miami v. Aronovitz, 114 So.2d 784, 787 (Fla.1959) ("[T]he requirement of obtaining a driver's license and the exercise of the privilege of driving over the public highways, together with the correlative loss of the privilege under certain conditions, is a reasonable regulation of an individual right [to the use of public highways] in the interest of the public good."); see also Thornhill v. Kirkman, 62 So.2d 740, 742 (Fla.1953) (stating that a driver's license is a privilege and that "[i]f [a person] cannot demean himself as a careful user, considerate of the right of others to do likewise, he becomes a public nuisance and should be excluded temporarily or permanently from their use").
Florida courts also have upheld as civil other regulatory remedies that deprive individuals of the enjoyment of certain licensed privileges. See, e.g., State v. Bowling, 712 So.2d 798 (Fla. 2d DCA 1998) (holding that revocation of a contractor's license was a civil sanction, not a criminal punishment, and did not bar criminal prosecution for fraud in violation of the Double Jeopardy Clause); Rowe v. Agency for Health Care Admin., 714 So.2d 1108, 1110 (Fla. 5th DCA 1998) (finding no ex post facto violation where a dentist's participation as a Medicaid provider was terminated upon his criminal conviction based on a statute enacted to protect the public but "did not increase the penalty" for the crimes); Borrego v. Agency for Health Care Admin., 675 So.2d 666, 668 (Fla. 1st DCA 1996) (holding that "[i]n Florida, the license to practice medicine is considered a privilege granted by the sovereign" and the state's suspension of appellant's license following a criminal fraud conviction under a statute intended for public protection did not violate the double jeopardy bar).
Historically, therefore, Florida courts have held that a licensed privilege may reasonably be regulated. The purpose of suspension or revocation of such a privilege is not to punish the offender, but to protect the public. Our prior decisions clearly establish that in Florida, driver's license revocation and the unavailability of a hardship license for persons with four DUI convictions have not been viewed as criminal punishment.

3. Scienter
The third factor is whether the sanction comes into play only on a finding of scienter. See Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. The license revocation statute, section 322.28, does not contain a scienter element.

4. Punishment and Deterrence
The fourth factor is whether operation of the license revocation and hardship license statutes will promote the traditional aims of punishment, retribution, and deterrence. See Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. Section 322.28(2) provides for lengthening periods of license suspension or revocation as the number of DUI convictions increases. This revocation provision may, to some degree, serve as a deterrent, as may the Legislature's removal of the opportunity to obtain hardship licenses for drivers with four DUI convictions. Both these provisions, however, also serve the Legislature's stated purpose of protecting those traveling the highways by removing those who persist in endangering others. See § 322.263, Fla. Stat. (2005) (providing that one purpose of chapter 322 is to "[d]eny the [driving] privilege... to persons who, by their conduct and record, have demonstrated their indifference for the safety and welfare of others").
*1085 That the statutes at issue may serve a deterrent purpose does not necessarily render them criminal punishment. As the Supreme Court warned in Hudson, the "mere presence of this [deterrent] purpose is insufficient to render a sanction criminal, as deterrence `may serve civil as well as criminal goals.'" Hudson, 522 U.S. at 105, 118 S.Ct. 488 (quoting United States v. Ursery, 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996)); see also Flemming, 363 U.S. at 614, 80 S.Ct. 1367 ("Where the source of legislative concern can be thought to be the activity or status from which the individual is barred, the disqualification is not punishment even though it may bear harshly upon one affected.").

5. Criminal Behavior
The fifth factor is whether the behavior to which the statutes apply is also a crime. See Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. Section 316.193 specifies that a fourth conviction for DUI constitutes a third-degree felony. Thus, the requirement of permanent license revocation upon a driver's fourth DUI conviction is based on criminal behavior. Further, section 322.271(4) now contains no provision for such a felon to obtain a hardship license. That the conduct addressed by the statutes is also criminal, however, also is insufficient to make the civil remedy of license revocation criminally punitive. See Hudson, 522 U.S. at 104, 118 S.Ct. 488 (stating that a monetary penalty and employment debarment are not criminally punitive merely because the conduct on which the sanctions were based is also a crime).

6. Alternative Purpose
The sixth factor is whether an alternative purpose to which the sanction may rationally be connected is assignable for it. See Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. In other words, we analyze whether the imposition of permanent license revocation serves a legitimate governmental purpose other than punishment. As explained earlier, the Legislature has expressly stated the purpose behind chapter 322: "Provid[ing] maximum safety for all persons" on the highway and "deny[ing] the [driving] privilege" to those incapable of exercising that privilege without endangering the safety of others. § 322.263, Fla. Stat. (2005). Both revocation and unavailability of a hardship license are rationally related to that regulatory purpose. Together they protect the public by permanently prohibiting drivers with four DUI convictions from driving Florida's highways where they have repeatedly demonstrated their utter disregard for the safety and well-being of others. See United States v. Lovett, 328 U.S. 303, 324, 106 Ct.Cl. 856, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946) (Frankfurter, J., concurring) ("The fact that harm is inflicted by governmental authority does not make it punishment. Figuratively speaking all discomforting action may be deemed punishment because it deprives of what otherwise would be enjoyed. But there may be reasons other than punitive for such deprivation.").

7. Relationship of Restriction to Purpose
The seventh and final factor is whether the sanction appears excessive in relation to the alternative purpose assigned. See Hudson, 522 U.S. at 99-100, 118 S.Ct. 488. We find that the restriction herepermanent license revocationis not excessive in relationship to the statute's purpose of protecting the public. Section 322.42 requires that chapter 322 be "liberally construed" to give "the greatest force and effect ... to its provisions for the promotion of public safety." A driver's license is not permanently revoked upon a singleor even the second or thirdDUI infraction. Rather, section 322.28(2) requires *1086 revocation of driver's licenses for increasing amounts of time with each DUI conviction. A driver must accumulate four such convictions before his license is permanently revoked. § 322.29(2)(e), Fla. Stat. (2005). "The legislature has consistently indicated its intent to provide greater protection to the public from persons who had accumulated multiple DUI convictions." Dep't of Highway Safety & Motor Veh'ls v. Bender, 497 So.2d 1332, 1334 (Fla. 2d DCA 1986). The restriction of license revocation, made permanent by the unavailability of a hardship license, is therefore not excessive. "Obviously, the public is more susceptible to harm from one who has a pattern of driving under the influence." Id. Thus, the permanent revocation is a measured and legitimate exercise of the Legislature's power to protect the public.

8. Summary
Of the seven factors reviewed, only two support Lescher's claim that the statutes are in effect so punitive that they constitute criminal punishment. As explained above, however, administrative or civil remedies often serve a deterrent effect, and these statutes fully relate to the Legislature's stated purpose of protecting the public. Nor is the felonious nature of a fourth DUI conviction sufficient to convert this civil remedy into a criminal punishment. Therefore, the petitioner has failed to show by the "clearest of proof" that sections 322.28(2)(e) and 322.271(4) are "so punitive either in purpose or effect as to negate th[e] intention" of imposing a civil penalty thus effecting a civil remedy. Ward, 448 U.S. at 249, 100 S.Ct. 2636.[5]

III. CONCLUSION
The Fourth District asked whether the elimination of the availability of hardship licenses from section 322.271(4) for drivers with four DUI convictions constitutes an ex post facto law. As we stated at the beginning of our opinion, the prohibition against ex post facto laws applies only to criminal provisions. Our application of the Hudson factors to the statutes at issue reveals that, as the Legislature intended, they are part of a civil regulatory scheme for the protection of the public. We therefore conclude, as did the Fourth District, that "the amendment eliminating the hardship license, when applied to petitioner, is not unconstitutional as an ex post facto law," Lescher, 946 So.2d at 1142. We answer the certified question "no" and approve the district court's decision.
It is so ordered.
WELLS, PARIENTE, LEWIS, and BELL, JJ., concur.
QUINCE, C.J., and ANSTEAD, J., concur in result only.
NOTES
[1] The statute provided in pertinent part as follows:

(4) Notwithstanding the provisions of s. 322.28(2)(e), a person whose driving privilege has been permanently revoked because he or she has been convicted four times of violating s. 316.193 or former s. 316.1931 or because he or she has been convicted of DUI manslaughter in violation of s. 316.193 may, upon the expiration of 5 years after the date of such revocation or the expiration of 5 years after the termination of any term of incarceration under s. 316.193 or former s. 316.1931, whichever date is later, petition the department for reinstatement of his or her driving privilege.
§ 322.271(4), Fla. Stat. (1997).
[2] The petitioner had to demonstrate to DHSMV that in the last five years, (1) he had not been arrested for a drug-related offense, (2) had not driven a motor vehicle, (3) had been drug- and alcohol-free, and had completed an approved DUI program. § 322.271(4), Fla. Stat. (1997).
[3] Specifically, the Legislature readopted the 2002 Florida Statutes, which in turn implemented the 1998 amendment. See Dep't of Highway Safety & Motor Veh'ls. v. Gaskins, 891 So.2d 643, 644 (Fla. 2d DCA 2005) (noting that by reenacting the statutes effective July 1, 2003, "[t]he legislature cured the defect"); see also Dep't of Highway Safety & Motor Veh'ls v. Critchfield, 805 So.2d 1034, 1038 (Fla. 5th DCA 2002) ("Once reenacted by way of an adoption act as a portion of the Florida Statutes, a chapter or session law is no longer subject to challenge on the grounds that it violates the single subject requirement."), aff'd, 842 So.2d 782 (2003).
[4] Section 322.271(4), Florida Statutes (2005), reads as follows:

(4) Notwithstanding the provisions of s. 322.28(2)(e), a person whose driving privilege has been permanently revoked because he or she has been convicted of DUI manslaughter in violation of s. 316.193 and has no prior convictions for DUI-related offenses may, upon the expiration of 5 years after the date of such revocation or the expiration of 5 years after the termination of any term of incarceration under s. 316.193 or former s. 316.1931, whichever date is later, petition the department for reinstatement of his or her driving privilege.
[5] We reject without discussion Lescher's reliance on cases addressing various prison gain time provisions: Weaver v. Graham, 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981); Gwong v. Singletary, 683 So.2d 109, 113 (Fla. 1996); and Waldrup v. Dugger, 562 So.2d 687, 688-89 (Fla. 1990).