BENTON, J.,
dissenting.
I respectfully dissent. “The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all.” X Corp. v. Y Pers., 622 So.2d 1098, 1101 (Fla. 2d DCA 1993) (citing Platt v. Gen. Dev. Corp., 122 So.2d 48 (Fla. 2d DCA I960)). A plaintiffs losing position on the merits does not defeat entitlement to declaratory judgment. When a cause of action for declaratory relief is — as this one was — properly pleaded,[6] the plaintiffs are entitled to a judicial determination of the rights asserted, whether favorable to them or adverse. On this basis, I would reverse the trial court’s dismissal of appellants’ amended complaint in its entirety, and remand for further proceedings, including entry of declaratory judgment on all counts.[7]
In count I of their amended complaint, appellants asserted property and liberty interests, protected by the Fourteenth Amendment of the United States Constitution, in then* Florida licenses to operate motor vehicles;[8] and that the Department’s requiring them to install and maintain an ignition interlock device or face suspension of them licenses, without affording them any opportunity for a hearing, deprived them of federally protected interests without procedural due process. Granting a motion to dismiss the amended *923 complaint, the trial court opined, “Plaintiffs have once again failed to allege deprivation of a federally protected right.” On its own premises, this disposition was procedurally incorrect. Although the trial court necessarily reached the merits in ruling that appellants failed to allege a deprivation of a federally protected right, it dismissed the amended complaint rather than entering declaratory judgment.
I do not share the majority opinion’s view that further fact finding by the trial court is necessary to determine whether a Florida driver’s license is a property interest protected under the Fourteenth Amendment.[9] “[A] motion to dismiss for failure to state a cause of action is not a substitute for a motion for summary judgment, and in ruling on such a motion, the trial court is confined to a consideration of the allegations found within the four corners of the complaint.” Consuegra v. Lloyd’s Underwriters at London, 801 So.2d 111, 112 (Fla. 2d DCA 2001) (citing Cyn-co, Inc. v. Lancto, 677 So.2d 78, 79 (Fla. 2d DCA 1996)). See also Hialeah Race Course, Inc. v. Gulfstream Park Racing Ass’n, 210 So.2d 750, 752 (Fla. 4th DCA 1968) (“The test of sufficiency of a complaint in such a proceeding is not whether the complaint shows that the plaintiff will succeed in getting a declaration of rights in accordance with his theory and contention, but whether he is entitled to a declaration of rights at all.”).
“Property interests ... are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....” Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). While “the Legislature clearly contemplated fact-finding in declaratory actions,” Higgins v. State Farm Fire & Casualty Co., 894 So.2d 5, 12 (Fla.2004), when fact finding is necessary, the nature of the holder’s interest in a Florida driver’s license is a purely legal question for the court to decide. See Morley’s Auto Body, Inc. v. Hunter, 70 F.3d 1209, 1212 (11th Cir.1995).
Chapter 322, Florida Statutes, governs issuance, regulation and revocation of driver’s licenses. Any person who satisfies the statutory requirements is entitled to issuance of a driver’s license, see, e.g., § 322.14(l)(a), Fla. Stat. (2002) (“The department shall, upon successful completion of all required examinations and payment of the required fee, issue to every applicant qualifying therefor, a driver’s license as applied for .... ”), which is subject to suspension or revocation in conformance with other provisions in chapters 316 and 322, Florida Statutes. See Mackey v. Montrym, 443 U.S. 1, 10 n. 7, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979) (“That the Due Process Clause applies to a state’s suspension or revocation of a driver’s license is clear from our decisions in Dixon v. Love, 431 U.S. 105, 112, 97 S.Ct. 1723, 1727, 52 L.Ed.2d 172 (1977), and Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971).”); Bell v. Burson, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971) (“Suspension of issued *924 licenses ... involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a ‘right’ or a ‘privilege.’” (citations omitted)); Dep’t of Highway Safety & Motor Vehicles v. Pitts, 815 So.2d 738, 743 (Fla. 1st DCA 2002) (“It is without question that the ‘suspension of a driver’s license for statutorily defined cause implicates a protectible property interest.’ Mackey v. Montrym, 443 U.S. 1, 10, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979), This is a substantial private interest and due process applies to its denial.”). Under Florida law, the “notion of a property interest encompasses a variety of valuable interests that go well beyond the traditional view of property.” Lankheim v. Fla. Atl. Univ., Bd. of Trs., 992 So.2d 828, 834 (Fla. 4th DCA 2008) (quoting Moser v. Barron Chase Sec., Inc., 783 So.2d 231, 236, n. 5 (Fla.2001)), rev. den., 8 So.3d 1133 (Fla.2009).
The United States Supreme Court “has fully and finally rejected the wooden distinction between ‘rights’ and ‘privileges’ that once seemed to govern the applicability of procedural due process rights.” Roth, 408 U.S. at 571, 92 S.Ct. 2701 (footnote omitted). “A person’s interest in a benefit is a ‘property’ interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.” Perry v. Sindermann, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). “Even where a state is not required to extend a certain benefit to its people, after having chosen to extend it, the state may not withdraw that right on grounds of misconduct absent fundamentally fair procedures to determine whether the misconduct occurred.” Lankheim, 992 So.2d at 834.
Denominating driving on the public roads either a privilege or a right does not resolve appellants’ claims under 42 U.S.C. § 1983. See Souter v. Dep’t of Highway Safety & Motor Vehicles, 310 So.2d 314, 315 (Fla. 1st DCA 1975) (“Although respondent argues that driving on the roads of Florida is a privilege and not a right, the United States Supreme Court has held that this distinction is not determinative of whether procedural due process rights apply. To the contrary the U.S. Supreme Court has specifically ruled that ‘once [driver’s] licenses are issued ... their continued possession may become essential in pursuit of a livelihood.[10] Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.’ ” (quoting Bell, 402 U.S. at 539, 91 S.Ct. 1586)).
Although the court in Lescher v. Florida Department of Highway Safety & Motor *925 Vehicles, 985 So.2d 1078 (Fla.2008),[11] Lite v. State, 617 So.2d 1058 (Fla.1993),[12] City of Miami v. Aronovitz, 114 So.2d 784 (Fla. 1959),[13] and Smith v. City of Gainesville, 93 So.2d 105 (Fla.1957) (en banc),[14] states that a driver’s license is a privilege, it does so in the course of explaining that, just as the Legislature has the power by statute to require a motor vehicle operator to obtain a driver’s license, it also has the power by statute to impose restrictions on the use of the license and to specify the basis on which the license will be suspended or revoked. None of the decisions cited by *926 the majority for the proposition that a driver’s license is a privilege, rather than a right,[15] addressed the viability of a section 1983 claim. Our supreme court’s decisions describing a driver’s license as a privilege all[16] involve suspension or revocation of a driver’s license on statutory grounds.[17] *927 These decisions stand for the unremarkable proposition that a license “does not endow the holder thereof with an absolute property right in the use of the public highway.” Smith, 93 So.2d at 106 (citing Thornhill v. Kirkman, 62 So.2d 740 (Fla. 1953)) (“While in Carnegie v. Department of Public Safety, Fla.1952, 60 So.2d 728, we held that a driver’s license cannot be revoked arbitrarily or capriciously, we have nonetheless consistently followed the rule, which appears to be unanimous throughout the country, to the effect that upon a proper showing in accord with the prevailing statutes a motor vehicle operator’s license may be revoked.”). See also Thornhill v. Kirkman, 62 So.2d 740, 742 (Fla.1953) (“We think there is ample warrant for the legislature to treat a driver’s license as privilege, subject to suspension or revocation for cause. The owner of such a license holds it subject to reasonable regulation.... In this holding we do not overlook the right and liberty of appellant to use the highways as guaranteed by the Bill of Rights. At the same time none of these liberties are absolutes but all may be regulated in the public interest.”). None of these cases involved suspension, revocation, or imposition of conditions on a driver’s license in the complete absence of statutory authority and without procedural due process, as alleged here. Whether a Florida driver’s license is regarded as a right or as a privilege — and whatever facts may be developed on remand — the trial court erred in dismissing count I of the complaint.
The trial court dismissed counts II and III, like count I, on the same succinctly stated basis — that appellants had “failed to allege deprivation of a federally protected right.” Today’s decision affirms the dismissal of these counts, reasoning the claims are “illogical.” However that may be, the trial court was wrong in ruling that appellants had not alleged the deprivation of federal constitutional rights in counts II and III. Whether logically or not, both counts plainly allege the infringement of federally protected rights. In count II, appellants alleged the Department’s act of requiring installation of an ignition interlock device amounted to imposition of a criminal penalty (which the sentencing courts had failed or declined to impose) and therefore subjected appellants to double jeopardy in violation of the Fifth Amendment of the United States Constitution.[18] In count III, appellants alleged that the Department’s actions violated constitutional ex post facto principles, contrary to article I, section 10 of the United *928 States Constitution.[19] Appellants are entitled to a declaration of what their rights may or may not be in the circumstances.
In count IV of the amended complaint, appellants sought declaratory and injunc-tive relief against the Department, in addition to “equitable restitution of funds that [appellants] were required to pay for ignition interlock devices under the Department’s unlawful scheme,” under the Florida Constitution.[20] The trial court did not address whether or which asserted state constitutional rights the Department’s actions might have infringed, notwithstanding the numerous state constitutional law claims raised in count IV of the amended complaint. While sovereign immunity may, indeed, shield appellees from liability for monetary damages arising out of appellants’ claimed violation of state constitutional rights, see Garcia v. Reyes, 697 So.2d 549, 550 (Fla. 4th DCA 1997) (holding that “there is no cause of action for money damages against the state, its agencies or employees acting in their official capacities for police misconduct arising directly under the due process clause, article I section 9, of the Florida Constitution” and observing that the state has waived sovereign immunity pursuant to section 768.28, Florida Statutes, with respect to traditional torts but not to constitutional torts) — we need not decide the question today — appellants were entitled, at a minimum, to declaratory judgment as to whether the asserted rights were violated. See Depaola v. Town of Davie, 872 So.2d 377, 380-81 (Fla. 4th DCA 2004) (holding trial court erred in relying on Garcia to dismiss plaintiffs claim because plaintiff was entitled to seek declaratory and in-junctive relief based on his allegation that the Town of Davie had violated his due process rights notwithstanding plaintiffs request for supplemental relief in the form of money damages). See also X Corp., 622 So.2d at 1101.
Finally, count V was also improperly dismissed. In count V, appellants sought relief on grounds the Department’s actions constituted a taking of appellants’ private property for public use for which the Department failed to pay full compensation as required by article X, section 6, of the Florida Constitution and chapter 73, Florida Statutes. In the alternative, appellants sought just compensation for the Department’s alleged taking pursuant to the Fifth and Fourteenth Amendments to the United States Constitution. Appellants requested a declaration that the Department’s actions constituted a taking of private property and an order directing the Department to pay full compensation and *929 attorney’s fees under Florida law or just compensation pursuant to the federal constitution.
Sovereign immunity provides no defense to claims that the state has taken private property for public use without paying full compensation. See Boulis v. Fla. Dep’t of Transp., 733 So.2d 959, 962-63 (Fla.1999). See also State Rd. Dep’t of Fla. v. Tharp, 146 Fla. 745, 1 So.2d 868, 869 (1941) (holding that immunity of the state “will not relieve the State against any illegal act for depriving a citizen of his property; neither will it be permitted as a plea to defeat the recovery of land or other property wrongfully taken by the State through its officers and held in the name of the State”). Nor is there any reason why federal constitutional protections against unlawful takings cannot be vindicated in state court. See generally Kelo v. City of New London, Conn., 545 U.S. 469, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005). On count V, too, the appellants are entitled to declaratory judgment.
The judgment of dismissal should be reversed, and the case should be remanded for further proceedings including entry of declaratory judgment on the merits of all counts.

.The standard for declaratory judgment, set forth in May v. Holley, 59 So.2d 636, 639 (Fla. 1952), and reaffirmed by Martinez v. Scanlan, 582 So.2d 1167, 1170 (Fla. 1991), is:
Before any proceeding for declaratory relief should be entertained it should be clearly made to appear that there is a bona fide, actual, present practical need for die declaration; that the declaration should deal with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of the complaining party is dependent upon the facts or the law applicable to the facts; that there is some person or persons who have, or reasonably may have an actual, present, adverse and antagonistic interest in the subject matter, either in fact or law; that the antagonistic and adverse interestfs] are all before the court by proper process or class representation and that the relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity. These elements are necessary in order to maintain the status of the proceeding as being judicial in nature and therefore within the constitutional powers of the courts.
May, 59 So.2d at 639. See also Meadows Cmly. Assn., Inc. v. Russell-Tully, 928 So.2d 1276, 1279 (Fla. 2d DCA 2006).

. Whether appellants are entitled to injunc-tive relief, even if one or more of their positions is correct, is not before us on this appeal. In order to grant injunctive relief, the trial court would have to find that appellants have ”demonstrate[d] a clear legal right, the inadequacy of a remedy at law, and that an irreparable injury will occur if such relief is not granted.” E. Fed. Corp. v. Stale Office Supply Co., 646 So.2d 737, 741 (Fla. 1st DCA 1994) (citing Leon County Classroom Teachers Ass’n, FTP-NEA v. Sch. Bd. of Leon County, 363 So.2d 353 (Fla. 1st DCA 1978)). See also K.W. Brown & Co. v. McCutchen, 819 So.2d 977, 979 (Fla. 4th DCA 2002). Nor does any claim to money damages require decision on the present appeal.

. The asserted interest allegedly created by relevant Florida statutes in effect at the lime was in a driver’s license not conditioned upon installation of and payment for an ignition interlock device absent a court order.

. Fact finding may be appropriate for other reasons on remand, although whether appellants or other potential class members have been convicted of only one DUI or two appears to be irrelevant, certainly to anything other than damages. A second DUI conviction for which the trial court should have required the device does not alter the fact that the Department had no such authority with regard to persons convicted before July 1, 2005, when section 322.2715, Florida Statutes (2005), took effect. See Karz v. Dickenson, 932 So.2d 426, 427-28 (Fla. 2d DCA 2006); Embrey v. Dickenson, 906 So.2d 316, 317-18 (Fla. 1st DCA 2005); Dickenson v. Aultman, 905 So.2d 169, 171 (Fla. 3d DCA 2005).

. Justice Quince has stated the point eloquently:
In today’s society, it is difficult, if not impossible in some locales, to travel from place to place without a driver’s license. In many areas there is inadequate or no public transportation. We have come to rely more and more on the use of personal motor vehicles to get to work, to shop, to attend recreational activities, and to attend many other activities that are a part of daily life. It is sometimes virtually impossible to perform the ordinary functions of life without ready access to a motor vehicle. Thus, having a driver’s license is often not just a desire but a necessity.
Bolware v. State, 995 So.2d 268, 285 (Fla. 2008) (Quince, J., dissenting).

. In Lescher v. Florida Department of Highway Safety & Motor Vehicles, 985 So.2d 1078 (Fla.2008), Lescher could have applied for a hardship license at the time his license was revoked. Lescher argued a subsequent statutory amendment destroying his eligibility constituted an ex post facto law. The supreme court rejected this argument, ruling the provision did not constitute a punishment but was instead part of a civil regulatory scheme for tire protection of the public.

. In Lite v. State, 617 So.2d 1058 (Fla.1993), the court considered the constitutionality of section 322.055(1), Florida Statutes, which provided that the sentencing court "shall direct the department to revoke the driver's license” of a person convicted of a specified drug offense. § 322.055(1), Fla. Stat. (Supp. 1990). The court determined the license revocation provision was rationally related to the legislative goal, rejecting Lite's argument that the statute was an arbitrary exercise of the state's police power because a driver’s license could be revoked even though a motor vehicle was not used in the commission of the offense. Id. at 1060. The court stated that in
forfeiture proceedings, however, we have held that the government may not take an individual’s property unless it proves by clear and convincing evidence that the property being forfeited was used in the commission of a crime. In contrast to the forfeiture action where there is a distinct interest in property, there is no property interest in possessing a driver's license. Rather, driving is a privilege, and the privilege can be taken away or encumbered as a means of meeting a legitimate legislative goal.... Accordingly, subsection 322.055(1) is constitutionally valid even without the requirement that a motor vehicle be used during the commission of a crime.
Id. (internal citations omitted). There is no indication of any claim that the license revocation violated procedural due process requirements.

. In City of Miami v. Aronovitz, 114 So.2d 784 (Fla.1959), Aronovitz filed a complaint against the City of Miami and certain officials alleging that the practice of setting up a road block for the purpose of inspecting drivers’ licenses was an unconstitutional invasion of his right to use the public ways, and amounted to an illegal search and seizure. The supreme court rejected the argument, noting that section 322.15, Florida Statutes, provided that "[e]very licensee shall have his operator’s or chauffeur's license in his immediate possession at all times when operating a motor vehicle and shall display the same, upon demand of a patrol officer.” Id. at 786-87. The court then stated: “The owner of such a license exercises the privilege granted by it subject to reasonable regulations in the use of the highways common to all citizens. These requirements do not disregard the constitutional guaranties upon which the instant ap-pellee relies. We are committed to the view that so long as the regulations themselves are reasonable and are reasonably executed in the interest of the public good, the courts should not interfere.... [I]t is very much in the public interest that law enforcement officers be permitted to make periodic check-ups on the driving license qualifications of those who operate motor vehicles on the highways.” Id. at 787-88 (citations omitted).

. In Smith v. City of Gainesville, 93 So.2d 105 (Fla.1957) (en banc), the court considered the constitutionality of a statute which authorized municipal courts to revoke drivers' licenses under certain circumstances. The court rejected Smith's arguments, stating that “the State has ample power to require motor vehicle operators to obtain drivers' licenses. It likewise has the correlative power to impose reasonable restrictions on the use and enjoyment of the license. This, in turn, involves the power to make proper provision for the suspension or revocation of a driver's license under appropriate conditions and upon the occurrence of stipulated situations." Id. at 106.

. Appellants may have a protected liberty, as well as a protected property, interest. " 'Liberty' and 'property' are broad and majestic terms.... '[T]hey relate to the whole domain of social and economic fact.... ’ " Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 571, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) (quoting Nat'l. Mut. Ins. Co. v. Tidewater Transfer Co., 337 U.S. 582, 646, 69 S.Ct. 1173, 93 L.Ed. 1556 (1949) (Frankfurter, J., dissenting)). "Without doubt, it [the liberty guaranteed by the Fourteenth Amendment] denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of his own conscience, and generally to enjoy those privileges long recognized ... as essential to the orderly pursuit of happiness by free men." Id. at 572 (quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923)). See also Jones v. Kirkman, 138 So.2d 513, 515 (Fla.1962) ("It is unnecessary to engage in any extended discussion of the rights of one who operates an automobile over public highways. Further, little could be accomplished by repeating the oft-stated view of this and other courts that the privilege of driving an automobile over public highways is not an absolute organic right. It is conceded that any unreasonable interference with the privilege could amount to a deprivation of liberty without due process." (citations omitted)).

. In Bolware v. State, 995 So.2d 268 (Fla. 2008), the issue was whether administrative revocation of a license by the Department was a punishment or penalty which could be deemed a direct consequence of a criminal plea so that counsel representing a criminal defendant (or the trial court) was required to advise the defendant of this consequence in order for a plea to be knowing or intelligent. Bolware had entered a plea of no contest to driving while his license was suspended or revoked, and was ordered to pay a fine. Several months later, the Department determined he was an habitual traffic offender and revoked his license for five years pursuant to section 322.27(5). Bolware filed a motion pursuant to Florida Rule of Criminal Procedure 3.850, arguing his plea was not made voluntarily with understanding of the consequences because he was not advised before entering his plea that this license would be revoked for five years. The trial court denied relief, determining the license revocation was a collateral consequence of the plea. The supreme court affirmed, stating that the "trial judge's obligation to ensure that the defendant understands the direct consequences of his plea has been consistently interpreted to encompass only those consequences of the sentence which the trial court can impose.” Bolware, 995 So.2d at 273 (quoting State v. Ginebra, 511 So.2d 960, 961 (Fla. 1987)).

.In Jones v. Kirkman, 138 So.2d 513 (Fla. 1962), Jones challenged a statute which established a so-called "point system" for the evaluation of convictions of violations of laws or ordinances for the determination of the continuing qualification of any person to operate a motor vehicle. By the statute the Department of Public Safety was authorized to suspend the license of any motor vehicle operator upon record evidence that the licensee had been convicted of violations of motor vehicle laws or ordinances amounting to twelve or more points as determined by a point system specifically set forth in the act. The Department of Public Safety was required to notify a licensee immediately upon the entry of a suspension order. The licensee was thereupon allowed an opportunity to be heard in the county of his residence "as early as practical within not to exceed thirty days” after the request. Id. at 514 (citing § 322.31, Fla. Stat.). In rejecting the argument that a pre-suspension hearing was required, the supreme court stated:
The Florida Legislature has authorized the Department of Public Safely to suspend a driver’s license upon the occurrence of certain conditions. The Legislature itself has prescribed the conditions. The so-called 'point system’ is merely a legislative evaluation of convictions of traffic violations in terms of penalty points which, when accumulated in sufficient quantity during a stated period, lead to suspension of a driver’s license. When the point sys *927 tem is announced in the legislative enactment it will be upheld. When a state administrative agency under its general rule-making power has attempted to promulgate such a system its authority to do so has been denied.
Id. at 515 (citations omitted). The court noted that Jones “admitted that he had received a summons for each of the seven offenses alleged to have been the foundation for the suspension of the license. In most instances Jones had posted an appearance bond and the bond was estreated because of his failure to appear and answer the violations charged. In other instances he appeared and was found guilty.” Id. at 514.

. At least one court has determined that the Department's act of requiring installation of an ignition interlock device constituted a criminal penalty and subjected an appellant to double jeopardy. See Doyon v. Dep’t of Highway Safety & Motor Vehicles, 902 So.2d 842, 844 (Fla. 4th DCA 2005). See also Embrey v. Dickenson, 906 So.2d 316, 318 (Fla. 1st DCA 2005) (stating that “[wlhile section 322.16 provides general authority for the Department to impose time and purpose restrictions on drivers' licenses and to effect other administrative measures necessary to ensure the safety of Florida's highways, section 322.16 does not grant the Department the independent authority to impose a criminal punishment.”).

. Appellants alleged that proposed class members who had committed their offenses before July 1, 2002, the effective date of the statute first allowing — and in some cases mandating — courts to require use of an ignition interlock device for those convicted of driving under the influence, see Ch. 2002-263, § 4, Laws of Fla., could not be punished pursuant to the 2002 statutory amendments. Appellants also alleged that class members who committed their offenses of driving under the influence prior to July 1, 2005, and who were not required by any court to use an ignition interlock device, could not be required by the Department to install such devices pursuant to section 322.2715(4), Florida Statutes (2005).

. Appellants alleged and sought a declaration that the Department's actions deprived appellants of their property or liberty without due process and placed appellants in jeopardy twice for the same offense, contrary to article I, section 9, of the Florida Constitution; violated ex post facto principles, contrary to article I, section 10, of the Florida Constitution; violated article I, section 18, of the Florida Constitution, which prohibits an administrative agency from imposing a penalty except as provided by law; and unlawfully imposed a tax or fee in violation of article VII, section 1(a) of the Florida Constitution.