NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ARTHUR JAMES LAWS,  )
                                        )
                Appellant,           )
                                        )
v.                                      )       Case No. 2D12-5955
                                        )
STATE OF FLORIDA,           )
                                        )
                Appellee.            )
_____ )

Opinion filed August 22, 2014.

Appeal from the Circuit Court for Charlotte
County; Keith R. Kyle and John E. Duryea,
Judges.

Valarie Linnen, Atlantic Beach; and
Tauna R. Bogle, Punta Gorda, for
Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and John M. Klawikofsky,
Assistant Attorney General, Tampa, for
Appellee.


ALTENBERND, Judge.

Arthur James Laws appeals his judgment and sentence for felony DUI.

He argues that the trial court should have suppressed evidence of a medical blood draw

and that the use of such evidence is a violation of double jeopardy.  We reject his

arguments and write primarily to express disagreement with several older county court cases that discuss double jeopardy in this context. See State v. Yoder, 18 Fla. Supp. 2d 61 (Fla. Sarasota Cty. Ct. 1986); State v. Makin, 16 Fla. L. Weekly Supp. 430b (Fla. Leon Cty. Ct. 2008); State v. Godfrey, 7 Fla. L. Weekly Supp. 627a (Fla. Broward Cty. Ct. 2000).

Mr. Laws was involved in a motor vehicle accident at an intersection in Charlotte County shortly after midnight on September 5, 2009. He was arrested for DUI. This was at least his third such offense within ten years. The State filed an information alleging that he "did unlawfully drive or was in actual physical control of a vehicle within this state while under the influence of alcoholic beverages when affected to the extent that his normal faculties were impaired, or with a blood alcohol level of .08 or above."

Our record contains some trial exhibits, but it does not contain a transcript of the trial. Thus, our knowledge of the facts of this case is limited. It is undisputed, however, that Mr. Laws was requested to take a blood, breath, or urine test and that he refused to take the test. The standard implied consent warning form was introduced into evidence during the State's case.

It is also undisputed that Mr. Laws was injured in this accident and taken to Lee Memorial Hospital. On his arrival at the hospital, the doctors performed a medical blood test that revealed a serum blood alcohol level of "208." Apparently, the State obtained these records, and Mr. Laws believed that they would be introduced into evidence. As a result, he filed a motion to suppress.

In his motion to suppress, Mr. Laws argued that introduction of the hospital records would violate his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments of the United States Constitution, as well as his rights under Article I, section 12, of the Florida Constitution. His argument, however, was not based on an unreasonable search or seizure in the usual sense. Instead, he argued that, having refused to submit to a legal blood test and having suffered the consequences of that decision, the State should not be allowed to introduce his medical blood records into evidence. His argument is based on an unusual view of double jeopardy, but the three county court cases cited above support his argument.

The trial court denied the motion to suppress in a well-reasoned order, which has greatly assisted this court in the preparation of this opinion. At the conclusion of the order, the trial court explained that the denial was without prejudice to Mr. Laws' right to require the State to meet "all notice, relevancy, foundational, and predicate thresholds" at trial.

Instead of entering a no contest or guilty plea with reservation of appellate review on the denial of his motion to suppress, Mr. Laws went to trial where he was convicted of the offense by a jury. The State's exhibit list does not include records from Lee Memorial Hospital. Thus, we are unclear as to what evidence concerning the medical blood draw, if any, was presented to the jury. The defense exhibits include documents that would suggest the jury was informed of the serum blood alcohol test. Additionally, without the transcript, we do not know what other evidence was presented to establish impairment. Thus, it is doubtful that Mr. Laws has demonstrated that the court committed any error at his trial. See Klette v. Klette, 785 So. 2d 562, 563 (Fla. 1st

DCA 2001) (finding no reversible error where appellant failed to provide relevant hearing transcript or proper substitute so as to allow the appellate court to ascertain whether error had occurred).

In 2000, the supreme court answered a certified question from the Fourth District[1] establishing that records of hospital blood tests can be admitted in DUI cases. See Baber v. State, 775 So. 2d 258 (Fla. 2000), cert. denied, 532 U.S. 1022 (2001). After the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), the predicate steps necessary to introduce such evidence arguably might be more complex in order to satisfy the requirements of confrontation, see Johnson v. State, 929 So. 2d 4, 7-8 (Fla. 2d DCA 2005), but it remains clear that such medical tests can be relevant to establish a DUI.

DUI can be established under several alternative theories. In cases involving alcohol intoxication, a prima facie case can be established by proof that a person operating or in actual physical control of a vehicle is "under the influence of alcohol . . . to the extent that [his or her] normal faculties are impaired," § 316.193(1)(a), Fla. Stat. (2009), the person has "a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood," § 316.193(1)(b), or the person has "a breath-alcohol level of 0.08 or more grams of alcohol per 210 liters of breath." § 316.193(1)(c). Obviously, a hospital blood test may not be relevant to establishing a case under a breath-alcohol theory, but that theory was not included in the information in this case. Given the

---

[1]See Baber v. State, 738 So. 2d 379, 382 (Fla. 4th DCA 1999).

- 4 -

differences between legal blood tests and medical or serum blood tests,[2] at a minimum, a hospital blood test may need to be supported by additional expert evidence to be relevant and admissible in a case under a blood-alcohol theory. But in a case under an impairment theory, medical or serum blood tests are more likely to be admissible with a lesser degree of expert testimony.

In this case, the record suggests no reason why the medical blood test would have been irrelevant to the charges contained in the information. Thus, Mr. Laws can argue only that his decision to refuse to comply with the request for a sobriety test under section 316.1932 somehow prevented the introduction of otherwise relevant evidence. It is noteworthy that subsection 316.1932(1) expressly makes a refusal to submit to the statutory test a separate misdemeanor offense and provides that the refusal is admissible in evidence "in any criminal proceeding." Nothing in sections 316.1932, .1933, or .1934 suggests that the commission of this separate misdemeanor requires the suppression of relevant evidence in a criminal proceeding under section 316.193.

Mr. Laws' double jeopardy arguments are predicated upon a series of county court cases that can be traced to Yoder, 18 Fla. Supp. 2d 61. In Yoder, the defendant refused to submit to a blood test following an accident. At the hospital, a blood test was conducted for medical purposes, and it was not obtained at the request of law enforcement. The blood test itself was not taken in compliance with subsection

---

[2]See J.J. Paul, III, DWI: Blood, Tests & Fears: A Crash Course in Blood Alcohol Samples, 25 Champion 39 (June 2001); Carol A. Roehrenbeck & Raymond W. Russell, Blood is Thicker than Water: What You Need to Know to Challenge a Serum Blood Alcohol Result, 8 Crim. Just. 14 (Fall 1993).

316.1932(1)(f). The court granted the defendant's motion to suppress the blood test, stating that:

> The implied consent statute still contemplates a right to refuse such a test if the defendant is willing to suffer a license suspension and the admission of his refusal into evidence at his criminal trial. The admission into evidence of a medical blood test under these circumstances would, in effect, penalize the Defendant twice—once for his refusal and again through admission of the medical blood test. If the Legislature had intended this result, it would have stated that a medical blood test was admissible despite the defendant's refusal to submit to a legal blood test. This court will not presume what the Legislature has clearly not stated.

Subsequently, this line of reasoning was followed to grant similar motions to suppress medical blood tests in nearly identical cases. See Makin, 16 Fla. L. Weekly Supp. 430b; Godfrey, 7 Fla. L. Weekly Supp. 627a. We disagree with Yoder and its progeny that this particular civil penalty, which provides a penalty for the driver's conduct that occurs after a stop for DUI, acts to bar a subsequent criminal prosecution for the earlier unlawful operation of the motor vehicle. The administrative penalty of revocation of a driver's license is a civil sanction, not a criminal punishment. Cf. Lescher v. Fla. Dep't of Highway Safety & Motor Vehicles, 985 So. 2d 1078, 1081-86 (Fla. 2008) (holding that unavailability of hardship license for persons with multiple DUI convictions considered civil sanction, not a criminal penalty). Even if the civil penalty for refusal to comply with a request for a sobriety test were somehow regarded as punishment for DUI, under the applicable analysis provided in Hudson v. United States, 522 U.S. 93, 95-96 (1997), the civil penalty would not bar the subsequent criminal prosecution. See, e.g., State v. Bowling, 712 So. 2d 798 (Fla. 2d DCA 1998) (holding that under the analysis in Hudson, revocation of contractor's license was a civil sanction and did not bar a criminal

prosecution for fraud in violation of double jeopardy); <u>Borrego v. Agency for Health Care Admin.</u>, 675 So. 2d 666 (Fla. 1st DCA 1996) (holding that administrative suspension of doctor's medical license following a criminal fraud conviction did not violate double jeopardy).

Affirmed.

VILLANTI and CRENSHAW, JJ., Concur.